**FAMILIAS UNIDAS, An Unincorporated Association, and Irma Torrez et al., Plaintiffs-Appellants,**

v.

**Dolph BRISCOE et al., Defendants-Appellees.**

No. 78–1690.

United States Court of Appeals, Fifth Circuit.

June 18, 1980.

**394**

Mexican American Legal Defense & Educational Fund, Morris J. Baller, Vilma Martinez, San Francisco, Cal., Joaquin G. Avila, San Antonio, Tex., for plaintiffs-appellants.

E. Richard Larson, National Staff Counsel, American Civil Liberties Union, New York City, for amici curiae.

Joel M. Gora, Bruce J. Ennis, New York City, John A. Buckley, American Civil Liberties Foundation of Texas, Inc., Austin, Tex., for American Civil Liberties Union and Texas Civil Liberties Union.

James F. Parker, Asst. Atty. Gen., Austin, Tex., Emerson Banack, Jr., William T. Armstrong, III, San Antonio, Tex., J. C. Hinsley, Iris J. Jones, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before COLEMAN, Chief Judge, and REAVLEY and ANDERSON, Circuit Judges.

**REAVLEY, Circuit Judge:**

In the second appeal of this case we are called upon to consider the constitutionality, facial and as applied, of Tex.Educ.Code Ann. § 4.28 (Vernon 1972)[1] which empowers a Texas county judge to exact public disclosure of the membership of any organization within his county that he considers to be engaged in activities designed to interfere with the peaceful operation of the public schools. For their roles in a peaceful boycott by Mexican-American students of the public schools in Hondo, Medina County, Texas, the organizational and individual appellants, Familias Unidas and Irma Torrez, complain that the strictures of section 4.28 were levelled against them in derogation of their First Amendment guarantees of freedom of association. They seek redress under 42 U.S.C. §§ 1983, 1985 in the form of a judgment declaratory of the statute's unconstitutionality and an award of $10,000 in damages for injuries suffered by Torrez as a result of the application of the allegedly unconstitutional statute. To this end, they have hailed before us the former governor of the State of Texas (charged by the state to enforce its laws while in office), Judge Jerome Decker, County Judge of Medina

---

1. Tex.Educ.Code Ann. § 4.28 (Vernon 1972), provides:

§ 4.28. Interference with the Peaceful Operation of the Public Schools

(a) In order to maintain law, peace, and order in the operation of the public schools without the use of military force, the county judge of each county in this state is authorized to require any organization, operating or functioning within the county and engaged in activities designed to hinder, harass, or interfere with the powers and duties of the State of Texas in controlling and operating its public schools to file with the county clerk, within seven days after such request is made, the following information, subscribed under oath before a notary public:

(1) the official name of the organization and list of members;

(2) the office, place of business, headquarters, or usual meeting place of the organization;

(3) the officers, agents, servants, employees, or representatives of the organization;

(4) the purpose or purposes of the organization; and

(5) a statement disclosing whether the organization is subordinate to a parent organization and, if so, the name of the parent organization.

(b) The term "organization" as used in this section means any group of persons, whether incorporated or unincorporated, and includes any civic, fraternal, political, mutual benefit, legal, medical, trade, or other kind of organization.

(c) The information filed pursuant to Subsection (a) of this section is hereby declared public and subject to the inspection of any interested party.

(d) Any person having custody or control of the records of an organization who fails to furnish the information requested or any other person or organization who shall violate any provision of this section shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than $50 nor more than $200, and each day of violation shall constitute a separate offense.

County, Texas (who implemented section 4.28 against appellants), and the superintendent and members of the Board of Trustees of the Hondo Independent School District (at whose behest Judge Decker acted in invoking section 4.28). Each party is sued in his individual and official capacity.

The district court, on remand from an earlier decision by another panel of this court reversing the prior dismissal of appellants' complaint,[2] ruled that appellants had suffered neither infringement of constitutionally protected rights nor compensable injury from the implementation of section 4.28. The court also declined to adjudge the statute facially unconstitutional. We reverse, holding the statute to be constitutionally infirm. We do, however, agree with the determination of the district court that appellant Torrez failed to adduce evidence of compensable injury from the application of the unconstitutional statute sufficient to support an award of actual damages, but we hold that she is entitled to nominal damages and that both appellants shall receive their costs and reasonable attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Familias Unidas is a loosely structured organization of Mexican-American students and adults, formed in Hondo, Texas, in January, 1974, to seek reform and air grievances of that city's Chicano community with respect to the operation of the Hondo public schools. Irma Torrez, the individual plaintiff, is, and has from the group's inception publicly represented herself to be, its chairman and spokesman. At public meetings on January 29 and February 12, 1974, heavily attended by Hondo's Mexican-American community, Torrez, on behalf of the organization, presented the Hondo School Board with a list of specific requested reforms—e. g., that students be allowed to speak Spanish freely, that the schools begin offering bi-lingual educational programs and Mexican culture classes, that Chicano teachers be recruited, and that the schools' dress codes be altered. The proposed reforms, however, evoked a response from the Board of Trustees that was less than satisfactory to Familias members.

In the wake of these unsuccessful attempts to achieve what its members considered reasonable reforms through more conventional means, Familias Unidas, again led by Torrez, determined to sponsor a boycott of classes by Mexican-American students. On February 14, 1974, about one hundred and fifty students walked out of the Hondo schools. Junior and senior high school students left without adult supervision. Elementary school children were removed from their classes by Torrez and two other women associated with Familias Unidas who entered the school in accordance with a prearranged plan. Thereafter, Familias Unidas, by publication and otherwise, continued to support the boycott, to bolster the parents of participating students, and to use the boycott as a vehicle for drawing attention to the conditions in the Hondo schools which it felt to be in need of remedy. Some members of the organization clearly gave more than moral support to the cause by staffing an ad hoc surrogate school, teaching and feeding the boycotting students. Whether this particular endeavor was officially instigated or sponsored by Familias is unclear, though its operation was frequently endorsed in a newsletter published by the organization.

Reaction to the boycott in the Hondo community was unfavorable, and local public sentiment mounted against the group and its efforts. Evidence at trial illustrated several instances of reprisals and threatened reprisals by private citizens against members and suspected members of Familias Unidas and those in sympathy with the boycott. Official response was no more hospitable, as Torrez and the other two women who had participated in escorting the elementary children from their school, were arrested and charged with a misdemeanor under Tex.Educ.Code Ann. § 4.33

---

2. *Familias Unidas v. Briscoe*, 544 F.2d 182 (5th Cir. 1976).

(Vernon 1972) for disruption of school classes.[3]

Hondo school officials responded to the protest with a variety of tactics designed to quell the boycott. Pursuant to Tex.Educ. Code Ann. § 4.25(a) (Vernon Supp.1980),[4] the parents of each boycotting student were warned in a letter that failure to require their school-aged children to attend classes according to Texas' compulsory attendance law, Tex.Educ.Code Ann. § 21.032 (Vernon 1972), would subject the parents to potentially substantial liability in fines. Local radio broadcasts reiterated this admonition each half hour. Within two weeks the Board of Trustees filed suit in state district court to enjoin Familias, its members, and others from continuing the boycott.

Most significant to this appeal, the Board requested that Medina County Judge Jerome Decker invoke Tex.Educ.Code Ann. § 4.28 (Vernon 1972) to compel disclosure of the names of all the officers and members of Familias Unidas, the organization known to be sponsoring the boycott. Accordingly, on February 26, 1974, Judge Decker forwarded to Torrez, as chairman of Familias Unidas, a letter requiring Torrez to supply to him for public disclosure the names of that group's officers, the names of its members, its usual meeting place, and other information, pursuant to section 4.28. This initial disclosure demand was withdrawn due to its technical flaw in directing that the information be forwarded to the county judge, rather than to the county clerk as required by the statute. Soon thereafter, however, on March 4, 1974, a renewed and corrected disclosure demand issued. The response of the Familias membership to this threat of public disclosure—in light of the generally unfavorable climate of public sentiment and of specific instances of prior recriminations—was predictable. Active

---

3. Tex.Educ.Code Ann. § 4.33 (Vernon 1972), provides:

§ 4.33. Disruption of Classes

(a) Any person who, on school property or on public property within 500 feet of school property, shall alone or in concert with others willfully disrupt the conduct of classes or other school activities shall be guilty of a misdemeanor and upon conviction therefor shall be punished by a fine not to exceed $200.

(b) In this section:

(1) "School property" shall include public school campuses or school grounds upon which any public school is located, and any grounds or buildings used by a school for assemblies or other school-sponsored activities.

(2) "Public property" shall include any street, highway, alley, public park, or sidewalk.

(3) Conduct which disrupts the educational activities of a school includes:

(A) emission by any means of noise of an intensity which prevents or hinders classroom instruction;

(B) *enticement or attempted enticement of students away from classes or other school activities which students are required to attend; and*

(C) *prevention or attempted prevention of students from attending classes or other school activities which students are required to attend.*

(c) The provisions of this section shall be cumulative of existing law, and should any portion hereof be found to be in conflict with any provision of existing law, the provisions hereof shall prevail.

(emphasis added).

4. Tex.Educ.Code Ann. § 4.25(a) (Vernon Supp. 1980), provides:

§ 4.25. Thwarting Compulsory Attendance Law

(a) If any parent or person standing in parental relation to a child, within the compulsory school attendance ages and not lawfully exempt or properly excused from school attendance, fails to require such child to attend school for such periods as required by law, it shall be the duty of the proper attendance officer to warn, in writing, the parent or person standing in parental relation that attendance must be immediately required. If after this warning the parent or person standing in parental relation wilfully fails to comply, the attendance officer shall file a complaint against him in the county court, in the justice court of his resident precinct, or in the municipal court of the municipality in which he resides. Any parent or person standing in parental relation convicted of wilfully violating this section shall be fined not less than $5 nor more than $25 for the first offense, not less than $10 nor more than $50 for the second offense, and not less than $25 nor more than $100 for a subsequent offense. Each day the child remains out of school after the warning has been given or the child ordered to school by the juvenile court may constitute a separate offense.

participation in the organization declined noticeably following issuance of the disclosure demands.

Hoping to forestall the impending compulsory disclosure, Torrez and Familias Unidas filed suit on March 7, 1974, in federal court, naming as defendants the appellees here and seeking to have section 4.28 declared unconstitutional, to have its implementation enjoined, and to obtain damages for the members of the organization as a class, based on the instant application of the statute. Soon after the filing of this suit, the boycott ended. About this same time, on March 13, 1974, Judge Decker withdrew the demand for disclosure.[5] No response had been made to the disclosure demand, nor had sanctions for noncompliance been imposed pursuant to section 4.28(d). The Hondo School Board of Trustees followed Judge Decker's lead on October 1, 1974, formally resolving against the future use of the sanctions of section 4.28.

Appellants, nonetheless, pressed their action. In so doing, they were met with a set of interrogatories posed by appellees that would have required disclosure of the same membership information that appellants sought to shield by their court action. These inquiries may have been justified with respect to class action questions and necessary to establish a foundation for investigating the existence of actual injuries needed to justify the class claim for damages. Accordingly, appellants determined to eliminate the need to answer the offensive interrogatories by amending their complaint to eliminate all class action and damage claims on behalf of the organization, and to seek only injunctive and declaratory relief, plus $10,000 in damages for Torrez, personally. Nonetheless, on December 4, 1974, the district court dismissed appellants' action as a discovery sanction, pursuant to Fed.R.Civ.P. 37(b)(2)(C), for failure to answer the interrogatories.

On appeal, another panel of this court ruled the dismissal to have been improper in light of the amended complaint. *Familias Unidas v. Briscoe*, 544 F.2d 182, 191–93 (5th Cir. 1976). The court further considered the effect of Judge Decker's withdrawal of the disclosure demand and of the Board resolution on the continued vitality of appellants' claims for relief. The underlying controversy was determined not to have been mooted so as to preclude the action for damages and declaratory relief. The court ruled, however, that the withdrawal of the demand and the assurances that section 4.28 would not again be invoked against Familias Unidas "precluded . . . any continuing character of injury" and the threat of any likely recurrence, thus removing any basis for which appellants could seek injunctive relief. In this posture, appellants' action was returned to the district court. Following trial on remand, the district court denied all requested relief, holding the statute to be constitutionally sound and, appellants to have suffered no infringement of their First Amendment rights.

## II. MOOTNESS

Before we may proceed to a consideration of the substance of appellants' challenge to the statute, we must hurdle the obstacle to our path raised by the question of the continued vitality, and therefore justiciability, of this controversy. As noted above, another panel of this court has ruled at an earlier stage in this litigation that Judge Decker's withdrawal of the section 4.28 request directed to appellants did not render the entire case moot. 544 F.2d at 188. While Judge Decker's withdrawal of the demand and his assurance that he would not make further demands of appellants dissipated any basis for injunctive relief, *id.* at 186–88, sufficient adversity was said to remain over the past application of the statute simply in regard to the deleterious effect of the request, itself, to provide a justiciable case or controversy. Accordingly, this controversy was held to supply an adequate basis from which a federal court might enter a judg-

**5.** In his July 23, 1974, deposition, Judge Decker reiterated his resolve not to invoke § 4.28 against Familias. He admitted, however, that he "would probably write another letter" requesting disclosures if faced with a similar situation in the future.

ment declaratory of the constitutionality of section 4.28 and, *a fortiori*, an award of damages to Torrez pursuant to section 1983 if compensable injury were shown to have flowed merely from the receipt of the disclosure demand. *Id.* at 188–91. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Morrison v. Davis*, 252 F.2d 102 (5th Cir.), *cert. denied*, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1075 (1958) (judgment declaratory of unconstitutionality of statute is appropriate relief under § 1983).

■ A prior panel's determination of a legal issue constitutes the law of the case and, absent some significant intervening change of circumstances, precludes our reconsideration of the matter. *See Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1189–90 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979) (previous panel determination not binding in light of intervening Supreme Court decision). Nothing has transpired since the earlier decision to undercut the ruling that the case is not moot. Accordingly, we adhere to the determination of the previous panel.[6]

---

**6.** The Second Circuit has suggested that, to the extent that determinations regarding mootness constitute rulings on the existence of federal jurisdiction, *see, e. g., DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974), the concept of the law of the case, grounded primarily in judicial expediency, should not prevent their reconsideration. *Consumers Union of United States, Inc. v. Veterans Admin.*, 436 F.2d 1363, 1365 n.6 (2d Cir. 1971); *see* 1B J. Moore, Federal Practice ¶ 0.404[4] at 452.

**7.** Familias Unidas argues that it has standing to make these arguments, not on the basis of injury to itself, but on behalf of its members. The Supreme Court has long recognized that a voluntary association has standing to bring suit on behalf of its members when:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d

## III. CONSTITUTIONALITY OF THE STATUTE

Appellants urge a variety of theories by which they contend section 4.28 may be demonstrated to be unconstitutional. The concept of constitutional infirmity common to all of these theories, however, is that the compelled disclosure of membership lists of groups like Familias Unidas, provided for by the statute, constitutes an impermissible state intrusion upon the rights of association and privacy in association guaranteed to the members[7] of such groups by the First and Fourteenth Amendments to the Constitution.

■■ It is beyond question that "freedom of association for the purpose of advancing ideas and airing grievances" is a fundamental liberty protected from governmental intrusion by the First and Fourteenth Amendments. *Bates v. City of Little Rock*, 361 U.S. 516, 522–23, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960). *United States v. Robel*, 389 U.S. 258, 263 n.7, 88 S.Ct. 419, 423 n.7, 19 L.Ed.2d 508 (1967); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449,

---

343 (1975). Each of these criteria is satisfied here. Familias seeks in this action to protect its members from potential disclosure by the State of their affiliation with the organization by urging that § 4.28 be declared unconstitutional. The threat of compelled disclosure may be an incursion on individual members' First Amendment rights of expression and association, of which they, individually, would have a right to complain, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958), and it may discourage membership and therefore threaten the very existence of the organization. Moreover, the declaratory relief sought, inuring as it would to the benefit of all members, is ideally suited to allowing "associational standing." *Warth v. Seldin*, 422 U.S. at 515, 95 S.Ct. at 2213. Finally, recognizing Familias Unidas' standing and capacity to assert First Amendment rights on behalf of its members is singularly appropriate here where the purpose of the suit is to avert the potential disclosure of the identities of those members. *Accord, NAACP v. Alabama ex rel. Patterson*, 357 U.S. at 458–59, 78 S.Ct. at 1169–70. Accordingly, we find Familias Unidas to have standing to represent the rights of its members.

460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). Moreover, privacy in that association—particularly with respect to groups championing unpopular causes—is a vital incident of the primary right. Indeed, "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.,* at 462, 78 S.Ct. at 1172. *Accord, Ealy v. Littlejohn,* 569 F.2d 219, 228 (5th Cir. 1978).

Accordingly, the Supreme Court has repeatedly recognized that compulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association. *E. g., Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976); *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 544, 83 S.Ct. 889, 892, 9 L.Ed.2d 929 (1963); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). The public opprobrium, reprisals, and threats of reprisals that attend the airing of one's affiliation with an unpopular cause or group are substantial disincentives to engaging in such affiliations. This is illustrated by the evidence in this case of adverse public reaction to the efforts of Familias Unidas and the decline in organizational participation in the face of the threat of public disclosure of its membership.

Consequently, since *NAACP v. Alabama ex rel. Patterson,* the Supreme Court has applied an exacting scrutiny to compulsory disclosures of membership lists or associational ties, upholding them only when the act of disclosure or the information sought is shown to be "substantially related" to a legitimate and compelling underlying state interest. *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. at 546, 83 S.Ct. at 893; *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405

(1963). *See, e. g., Buckley v. Valeo,* 424 U.S. at 64, 96 S.Ct. at 656; *Communist Party v. Subversive Activities Control Board,* 367 U.S. 1, 93–96, 81 S.Ct. 1357, 1408–1410, 6 L.Ed.2d 625 (1961). Even when related to an overriding, legitimate state purpose, statutory disclosure requirements will survive this exacting scrutiny only if drawn with sufficiently narrow specificity to avoid impinging more broadly upon First Amendment liberties than is absolutely necessary. *Buckley v. Valeo,* 424 U.S. at 68, 96 S.Ct. at 658 (disclosure involved was "least restrictive means" of achieving permissible congressional goal); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed. 325 (1964); *Shelton v. Tucker,* 364 U.S. at 488, 81 S.Ct. at 252 (invalidated statute requiring broader disclosure of teacher's associations than was required to effectuate state's purpose); *Boorda v. Subversive Activities Control Board,* 421 F.2d 1142 (D.C. Cir.1969), *cert. denied,* 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970) (invalidated compelled disclosure by all members of Communist-action group when governmental purpose related only to certain classes of members).

■ The interest of the State of Texas underlying section 4.28 is the preservation of the peaceful, undisrupted functioning of its public schools. This plainly is a legitimate and compelling state purpose. *Grayned v. City of Rockford,* 408 U.S. 104, 119, 92 S.Ct. 2294, 2305, 33 L.Ed.2d 222 (1972) ("compelling interest in having an undisrupted school session").

The state seeks to effectuate this overriding interest through section 4.28, requiring public disclosures of information from any organization "engaged in activities designed to hinder, harass, or interfere with"[8] the

---

**8.** Appellants have urged us to strike the statute on the basis of the vagueness and of the overbreadth of this passage, upon which the decision whether to implement § 4.28 is based. Due to traditional, self-imposed jurisprudential limits we decline to follow either course. Vague laws are objectionable as transgressions of due process guarantees on two grounds: (1)

they fail to provide fair warning to citizens charged with their observance, and (2) by failing to provide clear guidelines, they lend themselves to arbitrary applications by those charged with their enforcement. *Grayned v. City of Rockford,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Though the disputed language may be vague in the abstract, its applicability

peaceful operation of the public schools. Though we write without benefit of an express legislative statement of purpose, the rationale behind the provision is apparent: By raising the spectre of public scrutiny and opprobrium for individuals supporting organizations engaged in disruptive activities, section 4.28 is intended to deter participation in, active support of, and affiliation with such groups and activities.

Thus, the act of disclosure—or, more accurately, the threat thereof—by deterring organized disruptions, does bear a relevant correlation to the legitimate object of peaceful operation of the schools. This case is, therefore, unlike *NAACP v. Alabama ex rel. Patterson* and *Bates v. City of Little Rock*, in which no justifiable relationship could be found between the disclosures demanded and the legitimate state interests there involved.

Moreover, the Supreme Court has in the past expressly upheld, against First Amendment challenges, analogous requirements that organizations disclose their membership lists, recognizing disclosure and the concomitant public scrutiny as a legitimate means of deterring groups from engaging in illicit activities. *Communist Party v. Subversive Activities Control Board*, 367 U.S. at 94, 101, 81 S.Ct. at 1409, 1413 (upheld section 7 of the Subversive Activities Control Act[9] which required "Communist-action groups" to file membership lists; Court recognized disclosure as a deterrent to infiltration and other secretive tactics in furtherance of these groups' avowed goals of violent overthrow of government); *People of State of New York ex rel. Bryant v. Zimmerman*, 278 U.S. 63, 72, 49 S.Ct. 61, 64, 73 L.Ed. 184 (1928) (upheld state law, effectively limited to the Ku Klux Klan, requiring filing of membership roster to deter future acts of violence consistent with Klan's history). *See Buckley v. Valeo*, 424 U.S. at 67, 96 S.Ct. at 657 (upheld required disclosure of campaign contributors as a means of deterring corruption); *Uphaus v. Wyman*, 360 U.S. 72, 81 S.Ct. 22, 5 L.Ed.2d 29 (1969).

Nonetheless, the disclosure requirement of section 4.28, while it is generally related to the effectuation of a permissible state purpose, sweeps too broadly, and therefore cannot stand. It fails to take stock of the individual members against whom it oper-

---

to the activities of Familias members, in enticing students to leave classes for the boycott and aiding their continued truancy, is clear. Many of these acts are specifically proscribed by other statutes also aimed at maintaining order in the schools. *See, e. g.,* Tex.Educ.Code. Ann. § 4.33(b)(3)(B) (Vernon 1972) (criminalizing enticement of students from classes). "One to whose conduct a statute clearly applies may not successfully challenge it [facially] for vagueness." *Parker v. Levy*, 417 U.S. 733, 756,. 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *United States v. Alfonso*, 552 F.2d 605, 615 (5th Cir.), *cert. denied*, 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129 (1977).

This restriction has not been so rigidly applied to overbreadth challenges. Particularly where a statute is argued to sweep within its prohibitions expressive activities protected by the First and Fourteenth Amendments, courts have been receptive to facial overbreadth challenges even from individuals whose conduct was within the legitimate sweep of the statute. *E. g., Grayned v. City of Rockford*, 408 U.S. at 114–15, 92 S.Ct. at 2302; *NAACP v. Button*, 371 U.S. at 432–33, 83 S.Ct. at 337–38.

Nonetheless, a declaration of facial invalidity is "manifestly, strong medicine" to be used "only as a last resort." *Broadrick v. Oklaho-*

*ma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). "[P]articularly where conduct and not merely speech is involved," in order that a statute should be stricken for facial infirmity "the overbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*, at 615, 93 S.Ct. at 2918. The disputed language could conceivably lend itself to application to protected activities. Keyed as it is to interferences with the actual "operation" of the schools, however, we do not believe the overbreadth of this passage to be so substantial that it may not be better resolved on a case-by-case basis. Particularly in light of the fact that the Texas courts have never been given the opportunity to render a clarifying and narrowing construction, refraining from a facial invalidation of the statute on constitutional grounds is the wiser course. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 99 S.Ct. 2301, 2312–14, 60 L.Ed.2d 895 (1979); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

9. Internal Security Act of 1950, tit. I, § 7, 64 Stat. 987, 993 (repealed, Pub.L.No. 90–237, § 5, 81 Stat. 766 (1968)).

ates. As the Supreme Court noted in *United States v. Robel*, 389 U.S. at 266 n.16, 88 S.Ct. at 425 n.16, "a number of complex motivations may impel an individual to align himself with a particular organization. (citation omitted). It is for that reason that the mere presence of an individual's name on an organization's membership rolls is insufficient to impute to him the organization's illegal goals." *See Elfbrandt v. Russell*, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); *Boorda v. Subversive Activities Control Bd.*, 421 F.2d at 1147–48. Oblivious to this principle, section 4.28 subjects to the public recrimination certain to follow from public disclosure, members who not only may not have participated in, but who may not have approved or even been aware of, their organization's involvement in the disruptive activities that triggered the disclosure provision. With respect to these people, disclosure bears no relation at all to the state interest in deterring school disruptions: One cannot be deterred from participating in that which he has already foresworn, nor be dissuaded from supporting that of which he is unaware.

The *Communist Party* and *Zimmerman* cases may, however, be said to have countenanced the public disclosure of passive and innocent members as an unavoidable concomitant to achieving those statutes' legitimate ends. *Boorda v. Subversive Activities Control Board*, 421 F.2d at 1147. There are, however, critical distinctions between the statutory schemes involved in those cases and that here which justify the difference in result.

The more vital distinction between these two sets of statutes is the nature of the organizations upon which they operate. The disclosure requirements in *Communist Party* and *Zimmerman* attached only to organizations either having a demonstrated track record of illicit conduct or explicitly embracing, as doctrine, plainly unlawful means and ends. The most egregious aspect of disclosure under section 4.28 never arose under those statutes, since individual members of such organizations necessarily knew or should have known of the illicit goals or proclivities of the organizations of

which they were a part. Under section 4.28, on the other hand, a passive member of an historically benign organization may unwittingly find himself the object of public scorn where other members once go awry and engage in proscribed conduct in the name of the association, this despite the fact that he had no part in, knowledge or prior warning of—or may even have objected to—such activity. While disclosure and the attendant public recrimination may be tolerated for knowing members of groups openly avowing unlawful goals, it need not be tolerated for those who have had no reason to anticipate that their organization would engage in proscribed conduct. The Supreme Court seems implicitly to have recognized this principle in *Gibson v. Florida Legislative Investigation Committee*, where, in disallowing compelled disclosures from NAACP membership rolls, it observed that "this Court 'has upheld . . . legislation aimed at the Communist problem which in a different context would certainly have raised constitutional issues of the gravest character.'" 372 U.S. at 547 n.2, 83 S.Ct. at 894 n.2, *quoting Barenblatt v. United States*, 360 U.S. 109, 128, 79 S.Ct. 1081, 1093, 3 L.Ed.2d 1115 (1959).

A second, more pragmatic, distinguishing factor is that the disclosure requirement of section 4.28 is differently imposed and incorporates a slightly different intended deterrent. The statutes challenged in *Communist Party* and *Zimmerman* required the registration of membership rosters of groups openly avowing illicit goals or having a history of repeated illegal and violent conduct. The statutes were intended to deter *future* organized acts consistent with such past histories or illicit goals by exposing the members of these groups and their activities to the harsh light of public scrutiny and accountability. *Communist Party v. Subversive Activities Control Board*, 367 U.S. at 94, 102–03, 81 S.Ct. at 1409, 1413–14; *People of State of New York ex rel. Bryant v. Zimmerman*, 278 U.S. at 72, 49 S.Ct. at 64. At the point at which disclosure was required, it would have been impossible to isolate those members with a

possible proclivity to engage in future illicit acts, in order to expose only them to public accountability. Disclosure of all members was, thus, the only practicable course.

Section 4.28 on the other hand, deters not so much by the exposure of individuals and their acts to constant public observation, as by the *threat* of exposure to public opprobrium and recrimination should a county judge decide that one's organization has engaged in proscribed conduct. Disclosure, itself, occurs only *after* members of the organization have differentiated themselves as active participants and knowing supporters of the particular conduct. Given this basis for distinction, after-the-fact disclosure and exposure to public ire of *all* members is unnecessary and unjustified.

■ Accordingly, we hold that, though related to a legitimate and compelling state interest, section 4.28 is facially defective in pursuing its aim more broadly than First Amendment jurisprudence will allow. Thus, the implementation of this constitutionally infirm statute against appellants was, of course, impermissible.[10]

## IV. DAMAGES

■ Having found section 4.28 to be unconstitutional, we now turn to whether plaintiffs are entitled to relief beyond the declaratory judgment. Under its amended complaint, and in light of this court's prior excision of the plea for an injunction, Familias presently seeks no further relief. Irma Torrez individually seeks $10,000 damages for violation of her associational rights. The district court found, however, that Torrez failed to prove any actual, compensable injury stemming from the receipt of the section 4.28 demand for disclosure. After a thorough review of the record, we cannot

conclude that this finding was clearly erroneous. *Bunn v. Central Realty of Louisiana*, 592 F.2d 891, 892 (5th Cir. 1979). The Supreme Court has made abundantly clear in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that private plaintiffs suing for violation of rights pursuant to 42 U.S.C. § 1983 are entitled to compensatory damages only upon proof of actual injury. Mere proof of the violation of a right will not support such an award of damages. Thus, Torrez is not entitled to the $10,000 damages that she seeks.

■ The Court in *Carey* also held, however, that even in the absence of proof of compensable injury, demonstration of a denial of the "absolute" right to procedural due process required an award of nominal damages not to exceed one dollar. 435 U.S. at 266–67, 98 S.Ct. at 1053–54. We believe that the rationale of *Carey* similarly requires an award of nominal damages upon proof of infringement of a fundamental First Amendment liberty. The sending of the demand pursuant to the unconstitutional statutory scheme—and, inferentially, the attendant fear of disclosure—was shown to have prompted a decline in the membership and participation in Familias Unidas. Torrez' right to associate freely with the members of that organization was, therefore, infringed. *See Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Accordingly, we hold that Torrez is entitled to receive nominal damages, not to exceed one dollar, based on the instant application of the unconstitutional statute and the resultant infringement of her First Amendment right of association. *See Familias Unidas v. Briscoe*, 544 F.2d at 192 n.19.

---

**10.** Though we hold the statute facially unconstitutional, its implementation against Familias Unidas provides a fair example of an objectionable application. Some individuals undoubtedly aligned themselves with Familias seeking a peaceful and lawful means of venting their frustrations with respect to the Hondo schools. The group's initial efforts at the Board meetings were consistent with these expectations. The decision of certain members, perhaps a majority, of the organization then to sponsor, aid, and participate in an unlawful boycott in the name of the organization should not be imputed to those who never anticipated joining in or supporting such an effort. Yet, they faced disclosure and public derision in common with their more militant associates. Such a result is neither necessary to statutory goals nor permissible.

We now turn to the question of who shall be required to pay this award. Each defendant was sued in his individual, as well as official, capacity. As long as the actions upon which the section 1983 claim is predicated were taken in the good faith performance of his official duties, however, each defendant enjoys immunity from personal liability for damages. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (immunity for school board members); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (immunity for governor). *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (absolute immunity for judge for his judicial acts unless those acts are committed in the "clear absence of all jurisdiction").[11] The Supreme Court explained the good faith standard of *Scheuer* in *Wood*, setting up two tests, one objective and one subjective. Under the alternative *Wood* formulations, an official is personally liable for actions taken while discharging his official responsibilities only if:

> [1] [H]e knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual] affected, or [2] if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [individual]. That is not to say that [officials] are "charged with predicting the future course of constitutional law."

420 U.S. at 322, 95 S.Ct. at 1001 (citation omitted).

Each defendant in this case simply relied on a state statutory scheme. There is no proof that this statute was implemented with a malicious intent. Nor do we believe, given the complexity of the considerations, that defendants could be charged with the knowledge that the statute was unconstitutional. The district court, accordingly, found that each individual defendant was entitled to this shield of immunity. We agree.

This qualified, good faith immunity insulates defendants only from liability in their individual capacities, however. It has no effect on their liability in their official capacities in suits in which they are otherwise susceptible to damages awards.[12]

Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent. *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2036 n.55, 56 L.Ed.2d 611 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Thus, damages may be awarded against a defendant in his official capacity if they would be available against the governmental entity, itself. *See Monell v. Department of Social Services*, 436 U.S. at 690 n.55, 98 S.Ct. at 2036 n.55.

The Supreme Court in *Monell* held school districts and local governments to be "persons" subject to suit under 42 U.S.C. § 1983, "where, as here, the action that is alleged to

---

11. Since no hearing or other process is required or provided for before a § 4.28 request is made, it is questionable whether the mere sending of this request would constitute a "judicial act," particularly in light of the variegated administrative responsibilities of county judges in rural Texas. *See* S. MacCorkle, D. Smith & J. May, Texas Government 340–41 (7th ed. 1974). *Stump v. Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1107; *Crowe v. Lucas*, 595 F.2d 985, 990 (5th Cir. 1979) (test of "judicial act" is "whether it is a function normally performed by a judge"). Even if the absolute immunity of *Stump* does not apply to Judge Decker, however, *Wood*-type qualified, good faith immunity would attach. *Crowe v. Lucas*, 595 F.2d at 990.

12. The Supreme Court has recently ruled that, regardless of the benign or good faith intentions of the officers through which it acts, a local governmental entity sued under § 1983 may not assert a good faith immunity defense, even in a suit grounded on an evolving constitutional doctrine that, at the time of their actions, the officials had no reason to know they were contravening. *Owen v. City of Independence*, —— U.S. ——, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). A necessary corollary to this rule is that no such immunity may be asserted by government agents sued in their official capacities, since such suits are in essence suits against government. *See Monell v. Department of Soc. Serv.*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2036 n.55, 56 L.Ed.2d 611 (1978).

be unconstitutional implements or executes a . . . decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2036. The request for implementation of section 4.28, voted by the Board of Trustees, certainly represents official policy of the Hondo Independent School District, and, therefore, the district is liable to Torrez for nominal damages based on the implementation of that policy. *Kingsville Independent School District v. Cooper*, 611 F.2d 1109, 1112 (5th Cir. 1980) (actions of trustees represent the only way a school district may act).

We do not, however, believe that Judge Decker's compliance with the school board request, by his issuance of the statutory disclosure demands, similarly represented the official policy of Medina County. There are, to be sure, many actions of a county judge that may justifiably be considered to constitute or represent county "policy" under *Monell*. In addition to his judicial duties, a Texas county judge is charged by the state constitution and statutes with the performance of numerous executive, legislative and administrative chores in the day-to-day governance of the county. *See, e. g.*, Tex.Const. art. 5, § 18 (county judge presides over Commissioners' Court, the county's legislative body); Tex. Rev.Civ.Stat.Ann. art. 689a–9 (Vernon 1964) (judge prepares county budget); Tex. Elec.Code Ann. arts. 4.02, 4.05, 8.29, 8.29b (Vernon 1967) (various duties in conducting elections). *See* S. MacCorkle, D. Smith & J. May, Texas Government 340–41 (7th ed. 1974). Because of the unique structure of county government in Texas, the judge— like other elected county officials, such as the sheriff and treasurer—holds virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one

other than the voters for his conduct therein. *Id.* at 347; E. Jones, J. Ericson, L. Brown & R. Trotter, Practicing Politics in Texas 205 (3d ed. 1977). Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983. *Monell v. Department of Social Services*, 436 U.S. at 694, 98 S.Ct. at 2038. *See generally*, Schnapper, *Civil Rights Litigation After Monell*, 79 Colum.L.Rev. 213, 215–19 (1979). The narrow authority delegated to the county judge in section 4.28, however, bears no relation to his traditional role in the administration of county government or to the discretionary powers delegated to him by state statute in aid of that role. Instead, his duty in implementing section 4.28, much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility. Accordingly, under the standards set forth in *Monell* we hold that Medina County is not susceptible to liability under section 1983 for Judge Decker's issuance of the disclosure demands.

Though logic would seem, then, to impel a finding of liability against the State— since the statute obviously represents the official policy of the State—the State enjoys immunities not shared by its two political subdivisions. In addition to a state's traditional sovereign immunity, the Eleventh Amendment and its judicial gloss [13] also prohibit private actions for damages against a state in federal court.[14] These

---

**13.** Local governments, to the extent that they are discrete corporate entities and not merely agents of the state under state law, are not considered part of the state for purposes of Eleventh Amendment analysis. *Monell v. Dept. of Social Serv.*, 436 U.S. at 690 n.54, 98 S.Ct. at 2036 n.54; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977).

*Lincoln County v. Luning*, 133 U.S. 529, 530–31, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

**14.** U.S.Const. Amend. XI provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of anoth-

immunities extend to actions against state officers sued in their official capacities, since these are, in essence, against the State. *Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1355.

A state's Eleventh Amendment and sovereign immunities may, however, be considered waived in regard to private damages actions grounded in statutes enacted by Congress pursuant to its power to enact "appropriate legislation" for the purpose of enforcing the Fourteenth Amendment against the states or state officials. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1975); *see* U.S. Const. Amend. XIV, § 5. The states may be considered to have waived their immunities and consented to such suits in federal court through their ratification of the Fourteenth Amendment. *Peel v. Florida Department of Transportation*, 600 F.2d 1070, 1078 (5th Cir. 1979). Moreover, states' Eleventh Amendment insulation must necessarily be understood to have been modified by the dictates of the subsequently enacted Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. at 455–56, 96 S.Ct. at 2671. The Supreme Court has, however, ruled that it will infer such a waiver or congressional abrogation of immunities only where Congress has made it unmistakably clear, either in statutory language or in legislative history, that it purposefully intends to make the states amenable to private damages actions under the particular statute in question. *Edelman v. Jordan*, 415 U.S. at 672–73, 94 S.Ct. at 1360. *See, e. g., Hutto v. Finney*, 437 U.S. 678, 693–700, 98 S.Ct. 2565, 2575–2579, 57 L.Ed.2d 522 (1978) (allowing awards of attorney's fees under 42 U.S.C. § 1988 against state prison officers in their official capacities due to explicit legislative history); *Fitzpatrick v. Bitzer*, 427 U.S. at 452–56, 96 S.Ct. at 2669–71 (allowing damages under 1972 amendments explicitly making states and their political subdivisions subject to Title VII, 42 U.S.C. § 2000e *et seq.*).

Section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, was plainly enacted "to enforce the provisions of the Fourteenth Amendment." *See Monell v. Department of Social Services*, 436 U.S. at 665, 98 S.Ct. at 2023. Nonetheless, the Supreme Court has flatly stated that neither the statutory language nor legislative history of section 1983 evinces a sufficient, express congressional intention to override the traditional immunities of the states to allow private damages actions against states and their officials pursuant to that statute. *Quern v. Jordan*, 440 U.S. 332, 339, 99 S.Ct. 1139, 1144–47, 59 L.Ed.2d 358 (1979) (made clear that *Monell* did not alter this interpretation); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). *See Edelman v. Jordan*, 415 U.S. at 676–77, 94 S.Ct. at 1362. Consequently, the State of Texas, like Medina County, may not be held liable to Torrez even for nominal damages under section 1983. The Hondo Independent School District will, therefore, be solely accountable for this award.

## V. ATTORNEY'S FEES

Under 42 U.S.C. § 1988, prevailing plaintiffs should recover reasonable attorney's fees "unless special circumstances would render such an award unjust." *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978). Though Familias and Torrez have each been less than completely successful—Familias having been refused injunctive relief by the prior panel, 544 F.2d at 186–88, and Torrez having been refused actual damages here—both prevailed with respect to the central issue of the case, the constitutionality of section 4.28. *Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979) (proper focus is whether plaintiff is successful on central issue). The granting of declaratory relief and nominal damages, based on our having found section

er State, or by Citizens or Subjects of any Foreign State.
Though the amendment literally limits federal judicial power only with regard to suits by citizens of another state or country, the amend-

ment has long been interpreted to preclude suits against a state by its own citizens, as well. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

4.28 to be unconstitutional, adequately justifies an award of attorney's fees to plaintiffs as prevailing parties under the statute. *See, e. g., McNamara v. Moody,* 606 F.2d 621, 626–27 (5th Cir. 1979) (awarding fees after allowing only nominal damages); *Pickett v. Milam,* 579 F.2d 1118 (8th Cir. 1978) (awarding fees after declaring voting redistricting plan unconstitutional and enjoining its implementation). The state officials and School Board members, all acting in their official capacities, have vigorously defended the constitutionality of section 4.28 during the six years of this litigation. Accordingly, plaintiffs are entitled to receive their reasonable attorney's fees and costs incurred originally in the bringing of this action and throughout the course of the ensuing appeals and remands. *Kingsville Independent School District v. Cooper,* 611 F.2d at 1114. The amount of attorney's fees awarded plaintiffs, however, should be based only upon the work performed on the issues on which they were successful. *Nadeau v. Helgemoe,* 581 F.2d 275, 278 (1st Cir. 1978). Accordingly, plaintiffs are not entitled to fees or costs incurred solely in pursuit of compensatory damages for Torrez or of the injunctive relief sought by both parties. *See Hardy v. Porter,* 613 F.2d 112, 114 (5th Cir. 1980) (plaintiffs entitled to attorney's fees only for issues on which they prevailed, but to the extent preparation for successful and unsuccessful claims overlapped, fees should be awarded for this work).

Because the substantive relief granted in this case was directed against defendants in their official capacities, the award of attorney's fees should be directed likewise. An award of attorney's fees under section 1988 against an individual in his official capacity ordinarily is treated as an award against the particular governmental body of which he is a representative, and is

to be paid from the funds of that body, whether or not it is a named party to the suit. *Hutto v. Finney,* 437 U.S. at 693–700, 98 S.Ct. at 2575–2579; *McNamara v. Moody,* 606 F.2d at 626. Since Congress enacted section 1988 pursuant to its plenary powers under U.S.Const. Amend. XIV, § 5, to enforce the Fourteenth Amendment against the states, the Eleventh Amendment and sovereign immunity do not stand as bars to these awards. *Hutto v. Finney,* 437 U.S. at 698, 98 S.Ct. at 2578; *McNamara v. Moody,* 606 F.2d at 626. *See* S.Rept. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5913.

Though all the defendants were sued in their individual capacities, as well, the same qualified "good faith" immunity that insulated them from personal liability for damages also forecloses their personal liability for plaintiffs' attorney's fees. *Universal Amusement Co. v. Vance,* 559 F.2d 1286, 1300–01 (5th Cir. 1977), *adopted on this issue as en banc opinion,* 587 F.2d 176 (5th Cir. 1978), *cert. denied sub nom. Butler v. Dexter,* 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 296 (1979).[15] Accordingly, Hondo Independent School District and the State of Texas will actually be responsible for plaintiffs' attorney's fees. Of course, since we have held Medina County not to be susceptible to this section 1983 suit under *Monell*—because Judge Decker's actions did not implement or constitute an official county policy—the county will share no responsibility for plaintiffs' fees and costs.

Finally, although we have discretion to receive affidavits and award fees accordingly in this court, *Davis v. Roadway Express Inc.,* 590 F.2d 140, 143 (5th Cir. 1979), considerations of expediency and judicial economy counsel in favor of remanding to the district court for a determination of the total award in this case. *Accord,*

---

**15.** An official, insulated from personal substantive liability by a *Wood*-type immunity, might nonetheless be personally susceptible to an award of attorney's fees where the plaintiff prevails over him in his official capacity and the official is found to have run afoul of the traditional bad faith standard of *Alyeska Pipe-* *line Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), by his conduct in the litigation, itself. *See Hutto v. Finney,* 437 U.S. at 700, 98 S.Ct. at 2579; S.Rept. No. 94–1011 *supra,* at 5 n.7. There is no suggestion of such misbehavior in this case.

*Panior v. Iberville Parish School Board,* 543 F.2d 1117, 1120 (5th Cir. 1976). Therefore, we remand to the district court solely for receipt and evaluation of plaintiffs' affidavits and determination of an award of reasonable fees and costs for the entirety of this litigation, including those incurred on this remand, consistent with the factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

REVERSED AND REMANDED.