James Russell STEVENS,
Plaintiff-Appellant,

v.

Opal GAY, Larry Hightower and Jerry Thomas, Defendants-Appellees.

James Russell STEVENS,
Plaintiff-Appellee,

v.

Opal GAY, Larry Hightower and Jerry Thomas, Defendants-Appellants.

Nos. 85–8594, 85–8678.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1986.

---

John P. Batson, Augusta, Ga., for Stevens.

John C. Jones, Asst. Atty. Gen., Atlanta, Ga., for Gay et al.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

## BACKGROUND

This is a § 1983 action brought by James Russell Stevens, an inmate serving a life sentence at the Georgia State Prison. When this controversy arose, the prison had a policy of allowing indigent inmates to send three letters per week at the expense of the prison, so long as the letters were addressed to members of the inmate's immediate family.

On July 14, 1981, Stevens sent a letter addressed as follows:

(Sister) Thats (sic) Immediate Family
Sis Linda Green
1435 Jan Lane
Jax. Fla. 32218

In the upper right hand corner he placed the letters N.F. (no funds) which was a reference to the mail policy described above.

When the letter arrived at the prison mailroom, it was handled by mail clerk Opal Gay. There was evidence at trial that the mailroom at that time was receiving a significant number of requests for postage free mail. Apparently to prevent abuse of this mail privilege, Ms. Gay telephoned correction officer Pansey Griner at the front gate to determine whether Linda Green was listed on plaintiff's mailing or visiting list. Griner erroneously informed Gay that Stevens had no such list on file, as was required. In fact, he had the required list and Linda Green is his sister.

Upon instructions from her supervisor, Larry Hightower, Ms. Gay opened the letter and read it to determine if it sounded like a "sisterly type" letter. It was hardly a letter of the kind one would write to a sister; it contained explicit sexual suggestions and profane language. Based on the content of the letter, Ms. Gay concluded that Linda Green was not Stevens' sister. She therefore initiated a disciplinary charge against him for abuse of mail privilege.

On July 16, 1981, Stevens wrote a second letter to Linda Green and submitted it without postage. Ms. Gay opened the letter, since she believed that Linda Green was not plaintiff's sister.

On *February 1, 1982,* in order to vindicate his First Amendment rights, Stevens filed a *pro se* action *in forma pauperis* against Correction Officers Opal Gay and Larry Hightower in their individual capacities.

On December 15, 1982, United States Magistrate Dunsmore conducted an evidentiary hearing to determine whether plaintiff's complaint was meritorious. The magistrate issued a report on January 25, 1983 in which he concluded that plaintiff's claim clearly is founded upon the abridgement of his First Amendment rights. The magistrate further noted that in light of *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), plaintiff likely would prevail on a motion for summary judgment at trial if he filed one.

In April 1984, the trial court issued an order requiring the parties to file a pre-trial order on July 20, 1984. On May 18, 1984, Georgia Legal Services lawyer Ozell Hudson, Jr. entered his formal appearance on

behalf of plaintiff.[1] Upon motions of plaintiff, the date for filing the pretrial order was first extended to August 20, 1984, then to September 20, 1984, and finally to October 1, 1984.

On October 1, plaintiff filed a motion to amend his complaint to add as defendants the Department of Offender Rehabilitation and the Board of Offender Rehabilitation.[2] He also sought to amend his complaint to sue Gay and Hightower in their official capacities and to add claims for declaratory and injunctive relief. In addition, plaintiff moved for summary judgment.

The trial court denied plaintiff's motion to amend on the grounds of undue delay and also denied plaintiff's motion for summary judgment.

On November 1, 1984, plaintiff filed a *pro se* motion for extension of time to amend the pretrial order. On November 12, plaintiff's counsel moved for and received permission to withdraw. Counsel's motion was based on his representation that Stevens insisted on his including a claim that counsel could not agree with.

On January 4, 1985, the court granted plaintiff additional time to secure representation. Present counsel, John P. Batson, entered his notice of appearance on January 8.

At trial, the court instructed the jury that plaintiff's rights had been violated but left to them the determination whether qualified, good faith, immunity barred recovery. The court denied plaintiff's motion to strike the qualified immunity defense. The jury found in favor of Stevens but held Gay and Hightower not liable because they in good faith relied on Department regulations.[3]

Plaintiff subsequently filed a motion for new trial and for judgment notwithstanding the verdict. He also filed a motion for attorney's fees and costs. The court granted only the latter motion, but awarded attorney's fees and costs against the State of Georgia, even though the defendants were sued only in their individual capacities, after it concluded that the defendants' prevailing on their good faith defense prevented their being ordered to pay attorney's fees and expenses. Based upon the agreement of the parties as to the amount, the court entered an order setting the amount of attorney's fees and expenses to date at $1,500.

---

1. Earlier in March, Mr. Hudson advised Magistrate Dunsmore that he wished to represent Stevens, and requested that discovery be reopened. Magistrate Dunsmore granted the request.

2. These parties were responsible for issuing the regulations on which Gay and Hightower relied to open plaintiff's mail.

3. The jury's verdict was: "We, the jury find in favor of the plaintiff, J.R. Stevens. But we find no liability against Opal Gay and Larry Hightower."

The jury answered special interrogatories as follows:

1. Was there a deprivation of the plaintiff's constitutional rights by the opening of his letters in July of 1981?

ANSWER: Yes  X
         No ___

2. If the answer to the above question is "yes," please answer the following question:

Which of the defendants' actions proximately caused the violation of the plaintiff's rights? Fill in the appropriate name(s):

Opal Gay
Larry Hightower

3. Which of the defendants, if any, have succeeded in establishing the defense of their qualified immunity?

Fill in the appropriate name(s):

Opal Gay
Larry Hightower

4. With respect to any defendant(s) named in your answer to question 3 above, does your finding of immunity result from: (a) a failure in their training or supervision; (b) a mistake made by the defendant(s) in good faith after he or she considered the regulations and other circumstances present when the letters were opened; (c) a combination of both (a) and (b) above?

| Fill in Name: | Place (a), (b), or (c) in appropriate box |
|---|---|
| Opal Gay | [B] |
| Larry Hightower | [B] |

## ISSUES

(1) Whether attorney's fees can be awarded under § 1988 against an individual who successfully asserts a good faith, qualified immunity defense to a § 1983 claim.

(2) Whether attorney's fees can be awarded against the State of Georgia when state officials are sued solely in their individual capacities.

(3) Whether the trial court abused its discretion in denying plaintiff's motion to amend his complaint to add as parties the Department of Offender Rehabilitation and the Board of Offender Rehabilitation.

(4) Whether the trial court erred in denying plaintiff's motion for a new trial.

(5) Whether the trial court erred in refusing to strike defendant Gay's assertion of a good faith, qualified immunity defense.

(6) Whether the trial court's instruction on the qualified immunity defense constitutes reversible error.

## DISCUSSION

### 1. *Attorney's Fees Against Defendant Protected by Qualified Immunity*

■ The trial court cited *Familias Unidas v. Briscoe,* 619 F.2d 391, 406 (5th Cir. 1980), and *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1103 (5th Cir.1981), as barring attorney's fees against the individual defendants, since the jury found they were entitled to a good faith immunity.

*Familias Unidas* states:

[t]hough all the defendants were sued in their individual capacities, as well, the same qualified "good faith" immunity that insulated them from personal liability for damages also forecloses their per-

sonal liability for plaintiff's attorney's fees.

*Familias Unidas* at 406.

The trial court ruled correctly on this issue.

### 2. *Attorney's Fees Against Georgia*

■ In plaintiff's main brief he admits "... that the eleventh amendment precludes the award of damages or attorney's fees against the State of Georgia." In his reply brief, however, he retracts this statement. In any event, *Kentucky v. Graham,* — U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), is directly on point and expressly holds that a governmental entity is not liable for attorney's fees when governmental employees are sued solely in their personal capacities. Appellant thus fails on this contention.

### 3. *Motion to Amend*

Plaintiff attacks the trial court's denial of his motion on the ground that the trial court did not comply with *Lonestar Motor Import, Inc. v. Citroen Cars Corp.,* 288 F.2d 69, 75 (5th Cir.1961), in that it failed to consider what effect the denial of the motion would have on the movant. *Lonestar* expressed the importance of the potential prejudice to both the defendant *and the movant* in the trial court's making its decision whether to allow an amendment. Speaking of the possible prejudice to the defendant and to the court, the Court said: "We can see no such prejudice. On the other hand, we see much prejudice, perhaps irreparable, if leave is not granted." *Lonestar, supra,* at 75.[4]

It is clear, therefore, that this Court, following this decision was required to consider the potential injury to a plaintiff if denied the right to amend.

Defendants here respond to plaintiff's argument by claiming that *Lonestar* was effectively overruled in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). They quote from this case:

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought, as the rules require, shall be "freely given."

*Id.* at 182, 83 S.Ct. at 230.

■ This argument is a complete *non sequitur.* To say that unless one of several things occurred, the privilege of amending shall be "liberally granted" does not mean that if none of such things occurred, amendment should not be "liberally granted." This is especially true in looking at the language of the court's opinion in *Foman,* for in addition to the several stated bases which would particularly call into play the liberal requirement of allowing an amendment, there is added "etc." We have no doubt that the reasoning of the court in *Lonestar*—the effect of the denial of a motion to amend because of the irreparable injury of such action on the plaintiff—might well have been included by the Supreme Court in its list of "reasons" under the term "etc." We are satisfied that under the present state of the law, a district court should consider the effect of such denial on the plaintiff as well as on the defendant and/or the administration of justice.

We have a particular reason in this case for giving special consideration to the effect on the plaintiff of the court's denial of his right to amend. Although the plaintiff sued the defendant individuals only in their personal capacity, the trial court said:

Defendants' success on their qualified immunity defense, however, insulates them from personal liability for plaintiff's attorney's fees. *Familias Unidas v. Briscoe,* 619 F.2d 391, 406 (5th Cir. 1980); *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1103 (5th Cir.1981). Nevertheless, since defendants Gay and Hightower were acting in their official capacities when they committed the constitutional violation, their employer, the State of Georgia, is responsible for paying an award of plaintiff's attorney's fees. *Familias Unidas,* 619 F.2d at 406.

This is incorrect, as conceded by the plaintiff, who says in his brief: "The plaintiff will admit that the Eleventh Amendment precludes the award of damages or attorney's fees against the State of Georgia."

■ The plaintiff sought to amend the complaint in order to join the state departments whose regulations the two individual defendants relied upon in their actions as decided by the jury in response to the special interrogatories. Had the amendment been allowed, then it appears that based upon the jury's findings Stevens had been deprived of his constitutional rights, a judgment would be required against the two proposed additional defendants, the Georgia Department of Offender Rehabilitation and the Board of Offender Rehabilitation. The State does not argue that attorney's fees would not be available as against them if they had been parties.

It is apparent from this record that the trial court intended for the plaintiff to be able to recover at least attorney's fees. It seems clear to a certainty that had the trial court known that such a result was impossible in the present state of the pleadings, but would be available if it had allowed the amendment, then the court's action in response to the motion to amend might well have been different.

Moreover, the State could in no way claim surprise or any other injury, because the State Attorney General's office represented the two individual defendants, even though acting in their individual capacity, throughout the trial.

As the court said in its order granting the attorney's fees against the State of Georgia: "There is no constitutional due process problem with assessing attorney's fees in this case" because the State's interests were adequately represented by the Georgia Attorney General rendering full

legal services to the defendants. *Glover v. Alabama Department of Corrections*, 734 F.2d 691 (11th Cir.1984) (other citations omitted.)

The "undue delay" ground on which the trial court denied the motion also bears some consideration. While the court stated that there had been undue delay, it must be remembered that the original complaint was filed by the plaintiff *pro se* while a prisoner in the state prison system. Nearly a year passed before the magistrate issued his report recommending a trial. More than a year passed before Georgia Legal Services lawyer Ozell Hudson entered an appearance for Stevens. Hudson thereafter asked to be relieved because he and his client could not agree on the nature of the proof to be offered as to damages and thereafter a new counsel was appointed who carried the case to a conclusion. As stated above, no prejudice of any kind has been shown to the State as a result of the several motions for continuance of the pretrial conference.

Considering all of the circumstances which we have outlined with some particularity, we conclude that it was error for the trial court to have denied the motion to amend.

#### 4. *The Denial of Plaintiff's Motion for a New Trial*

This issue has been resolved by our determination that the trial court erred in refusing to allow the amendment to the complaint.

#### 5. *Motion to Strike Gay's Assertion of a Good Faith Qualified Immunity Defense*

We find no error in the trial court's refusing to strike defendant Gay's assertion of her qualified immunity defense. The state of the law following *Procunier v. Martinez, supra,* cannot be said to have been so clear that the trial court should have decided as a matter of law that the mailroom personnel should have been aware of the correct interpretation of that case.

#### 6. *The Trial Court's Instruction on the Qualified Immunity Defense*

The trial court charged the jury:

You should consider such factors as whether or not you wish to charge a person who is a lower grade correction law officer and in a clerical function in a mailroom with a degree of understanding and an ability to sift through things that might take a lawyer or someone who is more trained in the interpretation of such documents as these regulations are consent ordered.

While this charge seems a little informal in stating to the jury that among the things they should consider is the type of position held by these minor employees in the mailroom, we cannot say that the charge so far fails in its proper purpose as to be reversible error.

### CONCLUSION

The Court affirms the part of the judgment that finds a lack of liability on the part of defendants Gay and Hightower. We affirm the trial court's judgment that Stevens had been deprived of his constitutional rights. We reverse that part of the judgment that found the State of Georgia liable for attorney's fees. We reverse that part of the judgment based upon the trial court's denial of the plaintiff's motion to amend his complaint.

AFFIRMED in part and REVERSED in part and REMANDED to the district court for further proceedings not inconsistent with this opinion.