Marian JOHNSTON–LOEHNER, as personal representative and next friend of Amber Johnston–Loehner, minor child, Plaintiff,

v.

Philip O'BRIEN, Principal, Lime Street Elementary School, Lakeland, Florida, Defendant,

Beverly Hall, Teacher, Lime Street Elementary School, Lakeland, Florida, Defendant,

Lime Street Elementary School, located in Lakeland, Florida, Defendant,

Neriah Roberts, Superintendent, School District of Polk County, Northwest District, Lakeland, Florida, Defendant,

School District of Polk County, Northwest District, Lakeland, Florida, Defendant,

John A. Stewart, Superintendent of Schools, The School Board of Polk County, Bartow, Florida, Defendant,

School Bd. Polk Co., Bartow, Florida, Defendant.

No. 92–CV–1824.

United States District Court, M.D. Florida, Tampa Division.

June 9, 1994.

Mathew Duane Staver, Staver & Associates, Orlando, FL, for plaintiff.

Jonathan Stidham, Boswell, Stidham, Purcell, Conner, Wilson & Brewer, P.A., Bartow, FL, for defendants.

MERHIGE, District Judge.

This matter is before the Court on a claim by an elementary school student that a public school and various affiliated Defendants violated her right to freedom of speech. Plaintiff's action arises under the First and Fourteenth Amendments to the Constitution and under sections 1983 [1] and 1988 [2] of title 42 of the United States Code. At issue is a school policy requiring students who wish to distribute written materials on school grounds to obtain the prior approval of the school superintendent. Plaintiff seeks a declaratory judgment that the policy, on its face and as applied to her, constitutes an unconstitutional restraint of free speech. She also seeks permanent injunctive relief, damages, and attorney fees. This matter was tried without a jury on March 11, 1994. For reasons which follow, the Court finds that Plaintiff is entitled to the declaratory relief she seeks.

Amber Johnston–Loehner, born on December 8, 1981, is an elementary school student residing in Polk County, Florida. In 1992 she attended the Lime Street Elementary School, a public school in Polk County.

The School Administration and Regulation, Chapter Eight, Section 6 Gx53–8.005, includes a policy on the distribution of non-course materials in schools, which was adopted by the Polk County School Board on March 10, 1982, and readopted on April 28, 1987. The policy states:

I. *Superintendent's discretion:* Non-course religious and secular materials distribution shall be left to the discretion of the superintendent of schools.

II. *Distribution guidelines:* Shall be distributed according to the following guidelines:

A. *Superintendent's permission:* All groups desiring the distribution of literature shall have the permission of the superintendent.

B. *Placement:* A place shall be designated within a school facility for the placement of religious and secular literature which may be supplied by outside groups or organizations for free distribution to students.

C. *Designated locations:* Literature is to be made available to students at the designated location only.

D. *Distribution:* No distribution of literature shall be undertaken through the classroom, homerooms, assemblies or on any portion of school property by staff, students or outsiders.

E. *Announcement:* An announcement shall be made that literature is available at the designated place.

F. *Employee influence:* No school employee may comment upon the decision of any group to make available or not make available literature or in any way influence others concerning literature or concerning the taking or reading of the literature.

In October, 1992, Plaintiff sought to distribute written materials directly to other students during non-class time. The materials were a religious pamphlet and a flyer inviting students to attend a church party as an alternative to Halloween trick-or-treating. Plaintiff consulted her teacher, who took the materials from Plaintiff and gave them to the principal. At the end of the school day,

---

**1.** 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** 42 U.S.C. § 1988 provides in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Plaintiff went to the principal's office to retrieve her materials. The principal told her that he would not permit distribution of religious material at the school, and that he had discarded her materials.

The following school year, subsequent to bringing this suit, plaintiff enrolled in a private school. She is still of public school age and resides in Polk County, but does not at present have definite plans to re-enroll in Polk County public schools.

*Mootness*

■ As a preliminary matter, Defendants contend that the case is moot because Plaintiff currently attends a private school and offers no evidence that she intends to return to the public elementary school. Therefore, according to the Defendants, there is no case or controversy before the Court, so the Court must dismiss the matter for lack of jurisdiction.

Under Article III of the Constitution, the Court may adjudicate only actual, ongoing controversies, which remain alive throughout the pendency of the proceeding. *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988). However, if the immediate controversy is resolved by circumstances, the Court retains jurisdiction "if there is a reasonable likelihood that [plaintiff] will again suffer the deprivation of . . . rights that gave rise to this suit." *Id.* at 318, 108 S.Ct. at 601.

Defendants rely on the case of *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), in which the Supreme Court held that a student's First Amendment claims against a school district were moot because the student had graduated. However, in the later case of *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Supreme Court made clear that the situation of a graduated student is not equivalent to the situation of a student who has left the school but is free to return.

In *Honig* the Court considered a suit against a public school district brought by two students who were no longer attending public schools in that district. A school in the district had suspended the students for misbehavior. The students claimed that the school violated their rights under the Education of the Handicapped Act in suspending them. By the time the matter reached the Supreme Court, the students were no longer attending public school in that district. The school argued that the case was therefore moot. The Supreme Court agreed as to one student, who was then older than twenty-one years, the age at which protection under the Act ends. However, the Court held that the case was not moot as to the other student who was still within the Act's protection, even though this student no longer attended school in the district and no longer resided in the district. The Court held that because the student remained a resident of the state and remained entitled to a free public education in that state, his claims were " 'capable of repetition, yet evading review,' " and there was a " 'reasonable expectation' " that he might again be subjected to the school conduct of which he complained. *Id.* at 318–20, 108 S.Ct. at 601–02 (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)).

In the instant case, although the Plaintiff no longer attends a Polk County public school, she remains a resident of the state and of the school district, and remains entitled to a free state education. Following *Honig*, there is a reasonable expectation that she might again be subjected to the school conduct of which she complains. Therefore, the question of whether the school's policy is constitutionally sound remains justiciable. Further, this plaintiff seeks more than injunctive relief—she seeks damages for past harm. Therefore, this case is justiciable as to past harm to the plaintiff, regardless of any expectation as to future harm. The Court determines that the case is not moot.

*First Amendment*

■ Defendants contend that the school policy requiring prior approval of written materials is content-neutral because it applies to all materials, regardless of content. Defendants further argue that permitting students such as the Plaintiff to distribute

religious materials at school would advance a particular religion, in violation of the Establishment Clause. Therefore, Defendants contend that the policy serves the compelling state interest of avoiding violation of the Establishment Clause.

Plaintiff contends that the school policy is a content-based prior restraint on speech, as demonstrated by the fact that Defendants admit to using the policy to screen out and prohibit materials with religious content. She argues that in order to be constitutionally sound, such a restraint must serve a compelling state interest and be narrowly drawn to serve that interest. Plaintiff correctly contends that the Defendants' asserted interest in avoiding violation of the Establishment Clause is invalid because permitting student distribution of religious materials does not violate the Establishment Clause. Therefore, Plaintiff argues, the policy neither serves, nor is narrowly drawn to serve a compelling state interest. On the contrary, according to Plaintiff, the policy allows unfettered administrative discretion. Consequently, Plaintiff contends, the policy is unconstitutional on its face and as applied to her.

It is beyond dispute that the school policy imposes a prior restraint on speech. It is also beyond dispute that the restraint is based on content, for only after reviewing content does the school decide whether particular materials may be distributed. Indeed, Defendants justify the policy with the content-based argument that materials dealing with religious subjects are inappropriate for distribution. Therefore, the questions before the Court are two: (1) What test should the Court apply to a content-based prior restraint in a public school; and (2) Does the disputed Polk County policy pass that test.

### Standard for Review

Both sides of this dispute present arguments based on legal tests developed for free speech disputes arising in contexts other than a school. The Supreme Court has made clear that a school presents unique circumstances requiring careful navigation between the rights of students and the needs of the school. Therefore, the tests applied to speech restraints outside the school context are not necessarily appropriate inside the school context.

■ The Supreme Court has consistently held that students enjoy First Amendment rights, but that those rights are limited by the special characteristics of the classroom which demand that school authorities exercise discipline and control over student activities. *See Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506–08, 89 S.Ct. 733, 736–37, 21 L.Ed.2d 731 (1969) (and cases cited therein). In *Tinker v. Des Moines School District,* the Court stated:

[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. Our problem lies in the area where students in the exercise of First Amendment rights collide with the rules of the school authorities.

*Id.* at 508, 89 S.Ct. at 737.

In *Tinker* the Court considered the balance between the free speech rights of public school students and the need for school discipline. In that case, the Court held that a school violated students' free speech rights when it suspended them for refusing to remove black armbands worn in protest of the Vietnam war. The Supreme Court reasoned that the wearing of armbands in protest was "akin to 'pure speech'" protected by the First Amendment, and that the school's fear of possible disturbance due to the controversial nature of the speech was insufficient to warrant this abridgment of students' speech. The Court stated:

[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble ... But our Constitution says we must take this risk....

In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly *where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," the prohibition cannot be sustained.*

*Id.* at 508–09, 89 S.Ct. at 737–38 (citations omitted; emphasis added).

■ Following *Tinker,* a school seeking to impose a content-based prior restriction on student speech must show that the restricted speech would materially and substantially interfere with school operations or with the rights of other students. Mere fear of possible interference is not sufficient to sustain a content-based prior restraint on student speech.

■ In the instant case Defendants attempt to show that the policy in dispute is necessary to avoid running afoul of the Establishment Clause, which would interfere with the rights of other students. Defendants' argument fails. Indeed, rather than preventing violation of the Establishment Clause, the policy itself violates that clause. Further, the sweep of speech restriction under the policy is so broad that it cannot be supported under the law. The applicability of the frequently used phrase of the basket ball enthusiasts "slam dunk" promptly comes to mind.

In *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), the Supreme Court set forth three requirements a government activity must meet in order to avoid running afoul of the Establishment Clause: (1) The activity must have a secular purpose; (2) The activity's primary effect must neither advance nor inhibit religion; and (3) The activity must not foster excessive government entanglement with religion. *Id.*

Defendants contend that permitting student distribution of religious materials would violate the Establishment Clause by putting the school in the position of advancing religion. Therefore, so the reasoning goes, they must prohibit distribution of such materials to avoid violation of the Establishment Clause.

However, the Establishment Clause forbids government to inhibit as well as to advance religion. A ban on all student religious speech clearly inhibits religion. It follows that, regardless of an avowed purpose to the contrary, the Polk County school policy, as applied, violates the Establishment Clause.

■ Further, the scope of this school policy encompasses all speech, not merely religious speech. A student wishing to distribute any form of written speech, from party invitations to political tracts, must submit that speech to a school official for content review and approval prior to distribution. No written guidelines limit the official's authority to grant or withhold approval.

Defendants justify the broad sweep of this prior restraint on the basis of the Establishment Clause, a justification that this Court determines to be invalid for reasons already stated. Defendants also imply that they do not apply the policy as broadly as it is written, but rather apply it only to speech that, in their view, might be controversial. An overly-broad restrictive regulation of speech is not saved by the fact that those in power choose to apply it sparingly. It is well-settled that the First Amendment right of free speech is equally offended by the threat of abridgment as by the act of abridgment. *See Forsyth County v. The Nationalist Movement,* —— U.S. ——, —— ——, 112 S.Ct. 2395, 2401–03, 120 L.Ed.2d 101 (1992) (overly broad discretion to restrict speech based on content, whether or not exercised, has potential to suppress particular ideas and violates First Amendment); *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) ("It is not merely the sporadic abuse of power by the censor by the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion."); *Sentinel Communications*

*Co. v. Watts,* 936 F.2d 1189, 1198 (11th Cir. 1991) ("it is the very existence of official discretion that gives rise to threat of injury sufficient to warrant an injunction").

As to Defendants' Establishment Clause argument, the Court determines that Defendants have failed to show that the religious speech that they seek to prevent would materially and substantially interfere with school operations or with the rights of others. The Court further determines that Defendants have failed to show that the limitless range of written speech which the policy gives them authority to prevent would materially and substantially interfere with school operations or with the rights of others. Indeed, free speech protection as contemplated by the First Amendment frequently experiences its vitality from controversy. Undisruptive controversy ought not to be unnecessarily harnessed. Indeed, it is frequently viewed as a teaching tool. Therefore, the Court declares that the school policy requiring prior approval of student written speech violates the First Amendment, as applied to Plaintiff and on its face. Plaintiff is entitled to a permanent injunction against enforcement of the policy.

■ Turning to the question of damages, the Court determines that Plaintiff is not entitled to compensatory damages because she has offered no evidence to prove actual injury as a result of Defendants' violation of her First Amendment rights. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Memphis Community School District v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986); *Familias Unidas v. Briscoe,* 619 F.2d 391, 402 (5th Cir.1980). However, Plaintiff has proved the First Amendment violation itself, and therefore is entitled to nominal damages of one dollar ($1.00). *See Familias Unidas,* 619 F.2d at 402.

■ Plaintiff asserts her claim against the Polk County School District; the Polk County School Board; Lime Street Elementary School; Philip O'Brien, Principal of Lime Street School; Beverly Hall, Teacher at Lime Street School; Neriah Roberts, Superintendent of Polk County School District, and John A. Stewart, Superintendent of Schools of the Polk County School Board. The Court determines that each of the individual defendants was acting in his or her official capacity in implementing the disputed school policy. Therefore, the Polk County School District and School Board are ultimately liable for damages to the Plaintiff.[3] *See Familias Unidas,* 619 F.2d at 403.

■ Under 42 U.S.C. section 1988, prevailing plaintiffs should recover reasonable attorney's fees in the absence of special circumstances rendering such a recovery unjust. *Familias Unidas,* 619 F.2d at 405. The granting of injunctive and declaratory relief, as well as nominal damages, based on a finding that the disputed policy is unconstitutional, adequately justifies an award of reasonable attorneys' fees to the Plaintiff. *Id.* at 405–06.

An appropriate Order shall issue.

### FINAL ORDER

This matter is before the Court for judgment following trial without a jury on March 11, 1994. For reasons stated in the accompanying Memorandum this date filed, upon due consideration and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED as follows:

1. The Polk County School District policy requiring that students obtain the review and approval of school officials prior to distributing any written material violates the free speech rights of students guaranteed by the First and Fourteenth Amendments.

2. The application of the Polk County School District policy to Plaintiff, which resulted in official confiscation and destruction of her written material, violated her free speech rights guaranteed by the First and Fourteenth Amendments.

3. Defendants, their agents, servants, employees, and all acting in concert therewith,

3. By ratifying the Fourteenth Amendment, the states, including their agent counties, waived sovereign immunity against private damages actions grounded in federal statutes enforcing the Fourteenth Amendment, including actions grounded in 42 U.S.C. §§ 1983 and 1988. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

be and are hereby permanently ENJOINED from enforcing that portion of the school policy at issue in this cause, requiring that students obtain the review and approval of school officials prior to distributing any written material.

4. Defendants, their agents, servants, employees, and all acting in concert therewith, be and are hereby permanently ENJOINED from confiscating materials from students and impeding distribution of materials by students, solely on the basis that the materials are religious in nature.

5. Defendants will pay damages to Plaintiff in the amount of one dollar ($1.00), plus taxable costs.

6. Defendants will pay Plaintiff's reasonable attorneys' fees. Defendants and Plaintiff will attempt to reach agreement on the amount of attorneys' fees. In the event that the parties are unable to reach agreement, the parties will submit appropriate pleadings and documentation to the Court for determination of the amount of Plaintiff's reasonable attorneys' fees.