

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2003

# Walker-Serrano v. Leonard

Precedential or Non-Precedential: Precedential

Docket 01-4098

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Walker-Serrano v. Leonard" (2003). *2003 Decisions.* Paper 584.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/584

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 15, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4098

AMANDA WALKER-SERRANO, by her parents;
LISA WALKER; MICHAEL SERRANO

v.

DONALD LEONARD, Individually and in his official
capacity as President of the Lackawanna Trail School
Board; CLYDE ELLSWORTH, Dr., Individually and in his
official capacity as Superintendent of the Lackawanna
Trail School District; NANCY SIMON, Individually and in
her official capacity as Principal of the Lackawanna Trail
Elementary School; PAT CARPENTER, Individually and in
her official capacity as a teacher at the Lackawanna Trail
Elementary School

Amanda Walker-Serrano,
Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 99-cv-00716
(Honorable A. Richard Caputo)

Argued/Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2002

Before: SCIRICA and GREENBERG, *Circuit Judges*,
and FULLAM, *District Judge**

_____

* The Honorable John P. Fullam, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

(Filed: April 15, 2003)

GORDON A. EINHORN, ESQUIRE
 (ARGUED)
Schnader, Harrison, Segal & Lewis
30 North Third Street, Suite 700
Harrisburg, Pennsylvania 17101

  Attorney for Appellants

STEPHEN S. RUSSELL, ESQUIRE
 (ARGUED)
MELINDA B. KAUFMANN, ESQUIRE
Stock & Leader
221 West Philadelphia Street
Susquehanna Commerce Center,
 East Building
York, Pennsylvania 17404

  Attorneys for Appellees

---

## OPINION OF THE COURT

---

SCIRICA, *Circuit Judge*:

In this civil rights action, plaintiff, a third grade elementary school student, sued her teachers, school principal and school board for damages under 42 U.S.C. § 1983 for allegedly preventing her from circulating a petition objecting to a planned third grade outing to the circus. The District Court granted summary judgment to defendants. We will affirm.

I.

Plaintiff Amanda Walker-Serrano was a nine-year-old third grade student at the Lackawanna Trail Elementary School. Walker-Serrano's third grade class planned a voluntary field trip to the Shriner's circus in Wilkes-Barre on April 7, 1999. Walker-Serrano did not approve of the voluntary outing because she believed the circus was cruel to animals. As a result, she prepared a handwritten petition stating, "We 3rd grade kids don't want to go to the circus

because they hurt animals. We want a better feild [sic] trip." On February 4, Walker-Serrano brought the petition to the playground at recess, where she persuaded more than thirty of her classmates to sign it.

The following day, February 5, Walker-Serrano was at her classroom desk during a class period of silent reading and independent work. A few students gathered at Walker-Serrano's desk. The classroom teacher, Elaine Mercanti, while breaking up the gathering, observed the petition on Walker-Serrano's desk and told her to put it away.

Later that day, Walker-Serrano again brought her petition to the schoolyard at recess. Defendant Pat Carpenter, one of the teachers supervising recess, observed a group of students around Walker-Serrano near a patch of ice on the playground. Carpenter then noticed that one of the female students was crying—she had fallen on the ice and was bleeding. Carpenter observed Walker-Serrano with a pencil or pen and the petition in the middle of the students and fearing that a student might be injured by the pencil or pen, instructed Walker-Serrano to put the objects away. Walker-Serrano contends that Carpenter told her either "put it away" or "you can't have that here."[1]

Walker-Serrano was never punished for soliciting signatures for her petition or for possessing the petition. Furthermore, Walker-Serrano attended the Lackawanna School Board meeting on February 22, 1999 in order to express her opposition to the scheduled circus field trip.

On April 7, 1999, the third grade class attended the Shriner circus as planned. Walker-Serrano and her mother stood outside the circus and protested alleged cruelty to animals. Local media covered the protest.

The day prior, April 6, Walker-Serrano sought—and received—permission to pass out coloring books and stickers which dealt with cruelty to animals at the circus to her fellow students at school.

---

1. For reasons of safety, the elementary school maintains it had an unwritten policy—since codified—prohibiting writing implements on the playground. The parties dispute whether this was the reason for Carpenter's action.

There was also some interplay between Walker-Serrano's parents—Lisa Walker and Michael Serrano—and school officials. When Walker-Serrano returned home on February 5, she informed her mother that she was not permitted to circulate her petition. Mrs. Walker telephoned defendant Nancy Simon, principal of the Lackawanna Trail Elementary School, and defendant Donald Leonard, president of the school board.

Shortly thereafter, Lisa Walker and Michael Serrano retained an attorney, who sent the school district a letter raising concerns about possible violations of Walker-Serrano's First Amendment rights. The district's solicitor, Sandra Boyle, responded that no rights were violated because Walker-Serrano was not prevented from expressing her views on the circus; she was simply told to put the petition away when her "activities briefly disrupted classroom instruction and may have contributed to a situation where another child fell down during recess." Boyle also expressed the view that "[e]lementary schools are not generally the environment for petition circulation."

On February 22, 1999, Walker-Serrano's parents accompanied her to the school board meeting to raise their concerns about the handling of the petition. Walker-Serrano's parents spoke, and the board and Principal Simon received copies of the petition, but no action was taken. Three days later, Solicitor Boyle sent a letter to Walker-Serrano's attorney noting a school policy[2] that

---

2. The relevant portion of the Policy provides: "The Board respects the right of students to express themselves in word or symbol and to distribute materials as a part of that expression, but recognizes that the exercise of that right must be limited by the need to maintain an orderly school environment and to protect the rights of all members of the school community . . . . The Board shall require that students who wish to distribute materials submit them for prior review. Where the reviewer cannot show within two school days that the materials are unprotected, such material may be distributed. Appeal from prior review shall be permitted to the Superintendent and the Board in accordance with district rules." This policy was developed pursuant to 22 Pa. Code. § 12.9(e), which provides, "School officials may require students to submit for prior approval a copy of materials to be displayed, posted or distributed on school property." (applies to all Pennsylvania public school students).

requires prior review of materials to be distributed by students.

Walker-Serrano's counsel suggested that the presentation at the board meeting should satisfy the requirements of the policy and that, because the policy allows distribution after two days of inaction by the school, Walker-Serrano could circulate the petition. Boyle responded that the petition had not been properly "presented for review." No request to circulate the petition was made after this time.

Walker-Serrano, by her parents, sued the president of the Lackawanna School Board, Donald Leonard; the superintendent of the school district, Clyde Ellsworth; Principal Nancy Simon; and teacher Pat Carpenter, all in their personal and official capacities. They seek damages from the defendants individually and from the school district for alleged violations of Walker-Serrano's rights to freedom of speech and association, violations of her right to petition for redress of grievances, and also under several state constitutional and common law causes of action.

The District Court granted defendants' motion for summary judgment, concluding Walker-Serrano's First Amendment rights were not violated as a matter of law, and finding defendants entitled to qualified immunity. The District Court also concluded the school district—in the person of Donald Leonard in his official capacity—could not be liable, as it lacked sufficient involvement in the actions complained of. Plaintiff appealed.

## II.

The public school environment presents special challenges for determining the extent of the First Amendment's protections. That the First Amendment protects student expression within schools is beyond challenge. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."). But the First Amendment has never been interpreted to interfere with the authority of schools to maintain an environment conducive to learning. The

Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* at 507. Accordingly, "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech."[3] *Id.* at 513.

This framework has generally been used to assess the constitutionality of restrictions on speech in high schools and middle schools. In those contexts, we have required that the school demonstrate a "well-founded expectation of disruption" or of interference with the rights of others, before upholding the restriction. *Sypniewski v. Warren Hills Reg'l Bd. of Ed.*, 307 F.3d 243, 253 (3d Cir. 2002); *Saxe*, 240 F.3d at 212.

But any analysis of the students' rights to expression on the one hand, and of schools' need to control behavior and foster an environment conducive to learning on the other, must necessarily take into account the age and maturity of the student. *Fraser*, 478 U.S. at 683-84; *Muller by Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1538 (7th Cir. 1996) ("Age is a critical factor in student speech cases . . . ."); *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 738 (7th Cir. 1994) ("[A]ge *is* a relevant factor in assessing *the extent* of a student's free speech rights in school."). The significance of age in this inquiry has called into question the appropriateness of employing the *Tinker* framework to assess the constitutionality of restrictions on

---

3. Even when not disruptive, a school may exercise control over speech that bears the imprimatur of the school, such as that in a school newspaper, *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), or lewd or plainly offensive expression, *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986). Neither party urges us to consider this case under either the *Hazelwood* or *Fraser* analyses. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214 (3d Cir. 2001) ("Speech falling outside of these categories is subject to *Tinker*'s general rule: it may be regulated only if it would substantially disrupt school operations or interfere with the rights of others.").

the expression of elementary school students. No other Court of Appeals[4] has ruled on the applicability of *Tinker* in this context. District courts engaging this issue have generally found that *Tinker* provides an appropriate mode of analysis of elementary school students' First Amendment rights. *Johnston-Loehner v. O'Brien*, 859 F. Supp. 575 (M.D. Fla. 1994) (distribution of religious literature); *Jeglin ex rel. Jeglin v. San Jacinto Unified Sch. Dist.*, 827 F. Supp. 1459 (C.D. Cal. 1993) (school dress code).

There can be little doubt that speech appropriate for eighteen-year-old high school students is not necessarily acceptable for seven-year-old grammar school students. Human sexuality provides the most obvious example of age-sensitive matter, *see Fraser*, 478 U.S. 683-84, but there are any number of topics that are more appropriate for older students than younger ones. *Cf. Peck v. Upshur County Bd. of Ed.*, 155 F.3d 274, 288 n. (4th Cir. 1998) (holding that a policy permitting distribution by non-students of religious material constitutional in the high school setting, but unconstitutional in the elementary school setting because of "the impressionability of young elementary-age children"); *Slotterback ex rel. Slotterback v. Interboro Sch. Dist.*, 766 F. Supp. 280, 296 (E.D. Pa. 1991) (noting the "impressionability" of children at elementary school level is a factor in determining whether to uphold a school policy). Furthermore, as students approach adulthood, their ability to form and express their own views becomes increasingly important. Younger students are at a stage in which learning how to develop relationships and behave in society is as or even more important than their forming particular views on controversial topics. *See Muller*, 98 F.3d at 1538 ("The 'marketplace of ideas,' an important theme in the high school student expression cases, is a less appropriate description of an elementary school, where children are just beginning to acquire the means of expression.") (opinion of Manion, J.). Instilling appropriate values is a primary goal for our public schools, one that is especially important in the earlier grades. Accordingly, young students demand a

---

4. This matter is discussed in *Muller*, 98 F.3d at 1535-39, 1545-47, but with varying views, none of which commanded a majority of the court.

far greater level of guidance—guidance that is fundamental to our public schools' mission.

That age is a crucial factor in this calculus does not necessary mean that third graders do not have First Amendment rights under *Tinker*. *Tinker* provides a flexible standard that arguably is able to incorporate these considerations. *Tinker* permits school regulation of student speech whenever the school can show that the speech would be disruptive, or would interfere with the rights of other students. In essence, *Tinker* requires that schools have a legitimate educational or disciplinary justification for regulating student expression. That elementary schools require a greater degree of control, or a different kind of control, over students might be accommodated within the *Tinker* analysis. At the very least, anything that interferes with the legitimate educational and disciplinary functions of elementary schools could be regulated under *Tinker*.

Supporting recognition of a qualified *Tinker* right is that elementary school students' freedom of conscience has been constitutionally protected for decades. *See, e.g., Ill. ex rel. McCollum v. Board of Ed.*, 333 U.S. 203 (1948) (religious education in public school grades four through nine unconstitutional); *Meyer v. Nebraska*, 262 U.S. 390 (1923) (right to teach foreign language to ten-year-old). For over fifty years, the law has protected elementary students' rights to refrain from reciting the pledge of allegiance to our flag. *W. Va. State Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943). Punishing a child for non-disruptively expressing her opposition to recitation of the pledge would seem to be as offensive to the First Amendment as requiring its oration.

Nonetheless, at a certain point, a school child is so young that it might reasonably be presumed the First Amendment does not protect the kind of speech at issue here. Where that point falls is subject to reasonable debate.

In any event, if third graders enjoy rights under *Tinker*, those rights will necessarily be very limited. Elementary school officials will undoubtedly be able to regulate much— perhaps most—of the speech that is protected in higher grades. When officials have a legitimate educational reason

—whether grounded on the need to preserve order, to facilitate learning or social development, or to protect the interests of other students—they may ordinarily regulate public elementary school children's speech.

Turning to this case, even if elementary school children are entitled to some protection under the First Amendment, it might be argued that, under *Tinker*, they have no right to seek signatures from their peers on a petition of the kind at issue here.

As a general matter, collecting petitions is a protected activity under the First Amendment. *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). It involves an encounter in which the petitioner advocates a position, seeking to persuade the listener to sign on to the cause. In response, the signer expresses his support for the position expressed. The petition creates an environment that encourages speech of a kind central to the First Amendment's concern. *See id.* ("[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.' ").

Nonetheless, a school setting, especially an elementary school setting, may require a different application. As Judge Greenberg elucidates in his concurring opinion, implicit in petitioning activity is that the young listener is capable of comprehending the advocated position. Furthermore, whether or not the young petitioner is reflecting and acting on her parents' views is relevant. When other legitimate factors are added to the mix, like the undoubtedly valid parental role and prerogatives with respect to other students, and the possibility of subtle coercion on the part of the petitioner, it is clear that school authorities must be given great leeway to regulate and restrict petitioning in elementary schools.

Yet while circulating petitions is clearly not always appropriate for elementary school students, we see no reason to conclude at this juncture that it never is. Plaintiff points out that one of Walker-Serrano's textbooks contained a lesson in which the students are asked to circulate a petition on a matter of community concern. This confirms the common-sense assumption that, at least some

of the time, elementary school students may be capable of circulating petitions in a manner consistent with educational goals, and that petitioning can be a significant learning experience for these children. But where signature gathering interferes with educational goals or interferes with the rights of other students, it can, of course, be restricted. In any event, we see no reason at this point to conclude that, as a general matter, these concerns cannot be addressed under the case-by-case approach specified in *Tinker*. Yet it bears noting that in an elementary school setting, the *Tinker* proscription against interfering with the rights of other young students is especially important.

### III.

Regardless of the extent the *Tinker* analysis is properly employed in the elementary school context, the record here does not support a First Amendment violation claim. There is no evidence that defendants acted outside of the permissible scope of their authority over third grade students, even if Walker-Serrano's petition caused no disruption.

Defendants contend they prevented Walker-Serrano from circulating the petition only when the petition appeared to cause disruption under *Tinker*. That may be so. That they encouraged other expressions of Walker-Serrano's opposition to the circus supports their view that their decisions were not based on animus to the position she expressed, but to the particular mode of expression in particular circumstances. Walker-Serrano contends her petition did not cause disruption either on the playground or in the classroom. She does not address whether her petition may have infringed on the rights of fellow students. But even if permitted, a school must be able to regulate the times and circumstances a petition may be circulated in order to fulfill its custodial and pedagogical roles. There can be no constitutional right, if any, to circulate a petition in an elementary school in class during a quiet reading period or on an icy playground.

It is undisputed that defendants did not discipline Walker-Serrano for circulating her petition, in which she

collected over thirty signatures. Because Walker-Serrano and her parents never petitioned the school for permission to circulate the petition (even beyond the signatures already collected) we cannot know that she would not have been permitted to circulate the petition on other occasions.

But the school authorities did something more. They permitted Walker-Serrano to distribute other materials to her fellow classmates — coloring books and stickers — expressing her views about the circus's alleged ill-treatment of animals. Whatever rights of expression Walker-Serrano may have possessed, her teachers, with insight and flexibility, more than accommodated them.

In sum, not only did Walker-Serrano collect over thirty signatures on her petition, she was never punished for this activity. Furthermore, the school authorities encouraged and permitted her to express her views in what they properly regarded as a pedagogically appropriate manner. As in *Fraser*, "[t]here is no suggestion that school officials attempted to regulate [Walker-Serrano's] speech because they disagreed with the views [she] sought to express. Nor does this case involve an attempt by school officials to ban written materials they consider 'inappropriate' for [elementary] school students, or to limit what students should hear, read, or learn about." 478 U.S. at 689 (Brennan J., concurring). Therefore, the record does not permit a finding that Walker-Serrano suffered an injury of constitutional dimension.

Whether or not similar interference with expression may result in a First Amendment violation in other contexts, the special responsibilities of elementary school educators, and our deference to the choices they make in operating schools, precludes elevating this dispute to the level of a constitutional violation. *See Sypniewski*, 307 F.3d at 260 (noting "leeway" granted public secondary and elementary schools). The number of everyday decisions that must be made with respect to the boundaries of acceptable behavior of third graders is so great that courts cannot second guess elementary school officials on every minor dispute involving third graders' expression. To do so would be to turn the courts into the guardians of elementary school discipline, an area within "the comprehensive authority of the States

and of school officials." *Tinker*, 393 U.S. at 507. Absent punishment for expression, a significant pattern of concrete suppression, or some other form of clear suppression of the expression of elementary school students, a federal First Amendment action is not an appropriate forum for resolution of disputes over schools' control of third graders' conduct.

Because this record does not support Walker-Serrano's contention that defendants violated her First Amendment rights, we need not reach the questions of defendants' qualified immunity or of School Board President Leonard's liability in either his personal or official capacities.

Accordingly, we will affirm the judgment of the District Court.

GREENBERG, *Circuit Judge*, concurring:

I join in the majority opinion, though my approach to this case leads me to file this concurring opinion to emphasize the particular nature of the claimed First Amendment right at issue here. This is not a case in which the defendants precluded the student-plaintiff, Amanda Walker-Serrano, from setting forth her views on the circus to the school authorities or punished her for doing so. Rather, Amanda asserts a First Amendment right to collect signatures on a petition and thus have her fellow eight- or nine-year old third grade students join her protest.[1] While, as the majority opinion points out, maj. op. at 9, "[a]s a general matter collecting petitions is a protected activity under the First Amendment," it seems to me that it will be a rare case in which such conduct should be protected when the signatures are sought from children as young as those involved here, particularly in a school setting.

I think that it is unlikely that the third grade children here could have had knowledge of how a circus treats its animals. After all, I have no such knowledge myself. Yet Amanda induced more than 30 of them to sign a petition that they did not want to go to the circus because it "hurt[s] animals." Of course, I recognize that even adults will sign petitions without understanding the issues involved and in doing so likely will be protected constitutionally, as will be the persons circulating the petitions. But the status of adults differs from that of children at school as in general public officers and agencies have no obligation to protect adults from their own conduct or the importuning by other persons. On the other hand, students are in the temporary custody of the school authorities who must protect them during the period of the custody. *See Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 122 S.Ct. 2559, 2565 (2002). Moreover, an eight- or nine-year old child might not be able to resist the peer pressure to sign a petition and thus might do so even if the petition advocates a position with which he or she does not agree. In any event, a child of such age should not be confronted with having to make the choice to sign or not sign.

---

1. We were told the students' age at oral argument.

It is also significant that in Pennsylvania education is mandatory and thus, while I do not doubt that most parents would send their children to school without a legal requirement that they do so, the children to whom Amanda presented her petition were in school in satisfaction of a statutory mandate. *See* Pa. Stat. Ann. tit. 24, §§ 13-1326, 13-1327 (West 1992). At the risk of being regarded as "not with it," "old fashioned," "out-of-date," or "politically incorrect," I acknowledge being of the view that parents do not send their children, particularly young children, to school in order for them to be solicited to state their opinions on matters of public concern or school administration.

I think it clear that it is not at all appropriate for third grade children to be asked to state their views by signing a petition, at least until they have an opportunity to ask for their parents' advice and guidance on the issue involved. Thus, it seems to me that the existence *vel non* of a First Amendment right here should take into account the interests of the children other than Amanda and their relationships within their families. When this case is considered from that perspective it becomes quite evident that Amanda has not advanced any interest worthy of First Amendment protection.

In considering this matter from the perspective of the interests of all the children I am on solid ground. While *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506, 89 S.Ct. 733, 736 (1969), made it clear that students do not shed their First Amendment rights at the schoolhouse gate, the case also indicated that there can be regulation of student speech interfering with the rights of other students. *Id.* at 509, 89 S.Ct. at 738. When Amanda presented her petition to the other children she was infringing on their rights as they were entitled while at school to be free from her solicitation of their signatures. Recently, in upholding a drug testing requirement for students participating in extracurricular activities against a claim that the requirement infringed the students' privacy interests, the Supreme Court, quoting Justice Powell's concurring opinion in *New Jersey v. T.L.O.*, 469 U.S. 325, 348, 350, 105 S.Ct. 733, 746, 747 (1985),

pointed out that "apart from education, the school has the obligation to protect pupils from mistreatment by other children . . . ." *Bd. of Educ. v. Earls*, 122 S.Ct. at 2565. While I recognize that some people are of the opinion that it is never too early for a person to learn to challenge authority, I believe that a school should protect an eight- or nine-year old child from the solicitation of another child to sign a petition and thus this case is without merit.

In the circumstances I agree that we should affirm.

FULLAM, *District Judge*, concurring:

Although I agree that the judgment of the District Court should be affirmed, I am unable to join fully in the opinions of my colleagues. The First Amendment rights of school children are undoubtedly somewhat more limited than the First Amendment rights of adults, as Judge Scirica's Opinion demonstrates. But that does not mean that a nine-year-old child should be treated as if she were a pre-schooler. To suggest that neither Amanda Walker-Serrano nor her classmates had sufficient maturity to express or form valid opinions concerning the proposed class trip to the circus, I find unacceptable. I therefore do not share my colleagues' seeming reluctance to hold that Amanda did indeed have a First Amendment right to circulate her petition. The crucial question, in my view, is whether any of the appellees violated Amanda's Constitutional rights, or whether they were merely imposing reasonable time, place and manner restrictions upon her exercise of those rights. That, in turn, depends upon whether the circumstances gave rise to a reasonable perception of a "well-founded expectation of disruption", *Sypniewski v. Warren Hills Reg'l Board of Education*, 307 F.3d 243, 253 (3rd Circ. 2002).

We are reviewing a grant of summary judgment. Although the record discloses significant factual disputes as to whether there was any actual disruption or interference with the rights of other students, the District Court's conclusion that, even if all such disputes were resolved in favor of the appellants, a distinct likelihood of disruption was present, is, in my view, unassailable. And, although Amanda was prevented from circulating her petition in the classroom, and on one occasion, in the playground at recess, the undisputed evidence establishes that she circulated her petition and otherwise exercised her First Amendment rights without interference from the defendants. The record as a whole clearly demonstrates that no Constitutional violation occurred.

Finally, I note my agreement with the District Court's ruling that, in any event, the defendants in their individual capacities are entitled to qualified immunity; that Mr. Leonard, the President of the School Board, had no liability in his official capacity; and that none of the named-

defendants was responsible for any policy which infringed Constitutional rights.

For all of these reasons, I agree that the judgment appealed from should be affirmed.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*