Susan BRANNIAN, David Cornacchia, Leona Gulck and Jennifer Shen, Plaintiffs,

v.

CITY OF SAN DIEGO and San Diego Municipal Employees Association, Defendants.

No. 02CV1726BTMWMC.

United States District Court, S.D. California.

March 29, 2005.

Foundation Staff Attorneys Mark J. Beutler and John R. Martin and Mark T. Bennett, Marks, Golia & Finch, LL.P., San Diego, CA, for the plaintiffs in Brannian.

Ann M. Smith and Fern M. Steiner, Tosdal, Smith, Steiner & Wax, San Diego, CA, for defendant Union.

Michael J. Aguirre, City Attorney, and Carra Lassman–Rhany, Deputy City Attorney, Office of the City Attorney, San Diego, CA, for Defendant City of San Diego.

## ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

MOSKOWITZ, District Judge.

On May 5, 2004, Plaintiffs filed a motion for summary judgment on their claims for declaratory and injunctive relief and nominal damages. Pursuant to the Court's request, Defendants waited to file their cross motion for summary judgment until January 28, 2005. For the reasons expressed below, the Court **GRANTS** in part and **DENIES** in part the parties' cross motions for summary judgment.

### I. *Background*

On August 29, 2002, Plaintiffs filed this action against the Municipal Employees Association ("MEA") and the City of San Diego (collectively "Defendants"). Plaintiffs allege that Defendants unlawfully coerced nonunion employees to join the union in violation of the First Amendment by failing to provide them eligibility for enrollment in dental and vision plans under the employer-provided Flexible Benefits Plan. Plaintiffs seek injunctive and declaratory relief and nominal damages.

Plaintiffs, nonunion employees of the City of San Diego ("the City"), are exclusively represented for the purposes of collective bargaining by Defendant MEA.[1] Since 1986, as a result of bargaining between the City and MEA, city employees have had access to a Flexible Benefits Plan ("the Plan") which provides each employee, regardless of union membership, with an annual lump sum allocation of pre-tax dollars ("Flex funds") to spend on various programs and insurance options.[2] Employees are required to choose both a health insurance plan (unless eligible for a waiver) and a life insurance plan with their Flex funds. If an employee has Flex funds left over, he or she may select other options, such as adding to their 401(k) Plan, enrolling in optional insurance plans, or having the excess funds returned as a taxable cash payment. If an employee fails to complete enrollment during the open enrollment period (which occurs once annually in June), the City automatically continues the employee's health and life insurance plan choices from the prior year and cancels all other benefit options. Any remaining monies are paid as ordinary taxable income.

As part of its collective bargaining agreement with the City, MEA is required to offer only health and life insurance plans to all City employees. As of July 1, 1987, MEA began offering optional dental and vision insurance as part of the Flexible Benefits Plan menu of options, *but only to its union members.*

For the June 2003 open enrollment, the City and MEA agreed that nonunion employees could enroll in the dental and vision insurance plans if they voluntarily paid a "fair share" agency fee that covered the cost of MEA's representational, collective bargaining and contract enforcement activities. The agency fee was less than what members paid in union dues. In addition, both union members and agency fee payers had to pay the actual insurance premiums for dental and vision plans. Nonunion employees who did not pay the agency fee remained ineligible to use their remaining Flex funds for the optional dental and vision plans.

In 2004, the City and MEA amended their collective bargaining agreement—effective until June 30, 2005—so that for the June 2004 open enrollment period any employee in MEA's bargaining unit, regardless of whether they were a union member, an agency fee payer, or a non-union employee, could enroll in the dental and vision care plans under the Plan.[3] On May 10, 2004, the City Council unanimously adopted this amendment, entitled Resolu-

---

1. Employees represented by the MEA are divided into four separate bargaining units: (1) the Professional unit; (2) the Supervisory unit; (3) the Administrative and Field Service unit; and (4) the Technical unit. Plaintiffs filed this class action suit on behalf of nonunion employees assigned to the Professional unit, the Supervisory unit, and the Administrative Support and Field Service unit. The Technical unit, which voted for agency shop, imposes a mandatory agency fee and therefore offers dental and vision plans to all its members.

2. For the 2002–2003 fiscal year, the annual lump sum allocation was $4,725. For the 2003–2004 fiscal year it was $5,125. Most recently, for the 2004–2005 fiscal year, the lump sum allocation was $5,575. (*See* Pls.' Mot. for Summ. J. at 17.) This allocation is the same for all employees, union and nonunion alike.

3. The signed agreement stated that "any employee in MEA's bargaining units will be eligible to enroll in the MEA sponsored Dental and Eye Care Plans offered under the Flexible Benefit Plan, whether the employee is a member of MEA, an agency fee payer, or a nonunion employee." (Castleman Decl. Ex. A.)

tion Number R–299186, in closed session and then again in open session.

### III. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *See id.* at 322–23, 106 S.Ct. 2548. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must not weigh the evidence or make credibility determinations in evaluating a motion for summary judgment. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### III. DISCUSSION

Plaintiffs contend that Defendants illegally coerced membership into their union—in violation of the First Amendment and 28 U.S.C. § 1983—by failing to allow nonunion employees to use their left over Flex funds to enroll in the MEA dental and vision plans. As the Court previously summarized, "Plaintiffs allege that by offering the insurance benefits at issue exclusively to union members, Defendants coerced them to join MEA in violation of their constitutional rights under the First Amendment." (Order dated April 30, 2003.)

Plaintiffs move for summary judgment on their claims for declaratory and injunctive relief and nominal damages. However, in denying Plaintiffs' February 25, 2004 motion for class certification, the Court already determined that Plaintiffs' claims for declaratory and injunctive relief were moot. (*See* Order dated September 27, 2004.) Nevertheless, the Court held that Plaintiffs' claims for nominal damages were not moot. (*Id.* at 8.) Moreover, the Court specifically held that Plaintiffs "may still seek nominal damages." (*Id.* at 14.) As such, the only remaining issue left for the Court to consider on cross motions for summary judgment is whether or not Plaintiffs are entitled to nominal damages and attorney fees as a matter of law.

Defendants, in their cross motion for summary judgment, contend that Plaintiffs have failed to demonstrate the necessary standing and past injury to warrant an award of nominal damages or attorney fees.

### A. STATUTE OF LIMITATIONS

The parties dispute the earliest open enrollment period the Court may look to in determining whether a constitutional violation occurred sufficient to warrant an award of nominal damages. Plaintiffs assert that the Court must first look to the 2001 open enrollment period. Defendants contend that the Court can only look as far back as the 2003 open enrollment period. Both parties are mistaken.

■■■ It is well settled that federal courts must borrow the statute of limitations applicable to personal injury claims in the forum state for § 1983 suits. *See Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir.2004) (borrowing Arizona's statute of limitations for personal injury claims in a § 1983 action); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998). However, federal law governs when a § 1983 cause of action accrues and the statute of limitations begins to run.[4] *Cabrera*, 159 F.3d at 379. Moreover, "[o]nly the length of the limitations period,

and closely related questions of tolling and application are to be governed by state law." *Wilson*, 471 U.S. at 269, 105 S.Ct. 1938 (footnote omitted).

Plaintiffs here filed their complaint on August 29, 2002. At that time, California's statute of limitations for personal injury actions was one year. *See* CAL. CODE. CIV. PROC. § 340(3) (2002).[5] The open enrollment period for city employees occurs once annually in June. Therefore, the June 2001 open enrollment period falls outside the one year applicable statute of limitations. Accordingly, the June 2002 open enrollment period (for the 2002–2003 year) is the earliest period the Court may consider in determining whether the Defendants violated the First Amendment. In deciding this matter, the Court will examine the 2002 and 2003 open enrollment periods.[6]

### B. PAST INJURY TO PLAINTIFFS

Defendants contend that Plaintiffs failed to demonstrate an actual past injury sufficient to establish Article III standing or to support a factual claim for nominal damages. Moreover, at different points, Defendants argue that Plaintiffs lack standing and/or that they have failed to prove an actual past injury necessary to warrant nominal damages for the 2002 enrollment period.[7] The Court will address both arguments in turn.

---

4. Under federal law, the claim generally accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir.1994).

5. Effective January 1, 2003, California's statute of limitations governing personal injury torts was expanded from one year to two years. *See* CAL. CIV. PROC. CODE § 335.1; *Luther v. Fong Eu*, 2005 WL 43443, *3 n. 1 (N.D.Cal.2005).

6. At oral argument, Plaintiffs asserted that they are not seeking nominal damages for the

June 2004 open enrollment period which allows all employees, regardless of union membership, to enroll in the optional insurance plans without paying a agency fee.

7. At one point, Defendants argue that Plaintiffs have failed to show an actual injury in 2002 and therefore lack standing. However, in its reply memorandum, Defendant MEA asserts that their argument on past injury "is not an argument about *standing*. This is an argument regarding the failure of proof of *past injury*." (Def. MEA's Reply at 1) (emphasis in original.)

### 1. STANDING

Article III of the United States Constitution requires that a party have standing to maintain an action in federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The doctrine of standing contains three elements: (1) plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged action by the defendant; and (3) it must be likely that the injury will be redressed by a favorable court decision. *Id.* at 560–61, 112 S.Ct. 2130 (citations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* at 561, 112 S.Ct. 2130 (citations omitted). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof ...." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

### a. INJURY IN FACT

It is well settled that an injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical ...." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations and internal quotation marks omitted). Defendants contend that Plaintiffs have failed to demonstrate a past injury for the June 2002 enrollment period because they have only asserted a *future intention* to use their left over Flex funds to enroll in the optional insurance plans. Specifically, Defendants argue that Plaintiffs failed to allege that they *were* ready, willing and able to purchase the insurance prior to October 2002.

By order dated May 1, 2003, the Court previously dismissed Plaintiffs' original complaint in part for failure to allege a concrete, particularized injury. (Order dated May 1, 2003 at 4.) There, the Court found that Plaintiffs failed to "allege in their complaint ... that they were ready, willing, and able to purchase this insurance." (*Id.*) However, as the Court noted, Plaintiffs had submitted individual declarations on October 29, 2002 (in response to Defendants' motion to dismiss) stating that they would allocate their Flex funds for the optional insurance plans if allowed to purchase the plans in the future.[8] Although somewhat ambiguous due to Plaintiffs' chosen language and verb tense, the declarations seemed to allege only a *future* willingness and ability, not a past one. Plaintiffs's First Amended Complaint, filed on June 2, 2003, echoes this future intent.[9] Thus, while Plaintiffs clearly alleged a future injury running forward from October 2002, Plaintiffs failed to allege that they *were* ready, willing and able to purchase the optional insurance plans in the prior June 2002 open enrollment period.

In response to Defendants' cross summary judgment motion, Plaintiffs have now submitted a new round of declarations expressly stating that but for being prevented under the City's plan, they *would have* allocated their Flex funds for the optional insurance plans *in the June 2002 open enrollment period.* (*See* Pls.' Opp'n to Defs.' Mot. for Summ. J., Ex. A–D.) Defendants admit that these new declarations, while responsive in nature, are not con-

---

**8.** (*See* Declarations in Supp. of Pls.' Opp'n to Mot. to Dismiss, Doc. No. 13; Order dated May 1, 2003 at 5, n. 4.)

**9.** Plaintiffs' First Amended Complaint alleges only that "[P]laintiffs *are* ready, willing and able to purchase" the optional insurance plans and that "but for ... the discriminatory policy, they *would* purchase" the optional plans. (Pls.' First Am. Compl. at ¶ 14) (emphasis added).

trary to Plaintiffs' earlier declarations and therefore may now be considered by the Court. (Def. City's Reply at 2.) *See Scamihorn v. General Truck Drivers,* 282 F.3d 1078, 1086 n. 7 (9th Cir.2002) ("As a general rule, an affidavit submitted in response to a motion for summary judgment which contradicts earlier sworn testimony without explanation of the difference does not automatically create a genuine issue of material fact.").

■ Viewing the record as a whole, the Court finds that the new declarations sufficiently allege a past injury regarding the dental insurance plan for the 2002 open enrollment period. Plaintiffs Brannian, Cornacchia and Shen all clearly allege a past injury due to Defendants preventing them from enrolling in MEA's dental plan in June 2002. Indeed, when enrollment became free to nonunion employees in June 2004, these three Plaintiffs all used their Flex funds to enroll in the dental plan.

Plaintiff Gulck, however, the only Plaintiff that claims she would have enrolled in the vision plan, fails to allege a past injury and lacks standing. Plaintiff Gulck's new declaration states that she was covered by her husband's dental and vision insurance in 2002. (*See* Pls.' Opp'n to Defs.' Mot. For Summ. J., Ex. D.) Plaintiff Gulck goes on to state that she decided to not to enroll in MEA's dental or vision plans in June

2004, even when enrollment was free, because she felt her "husband's insurance was a better deal." (*Id.*)[10] Thus, Plaintiff Gulck, by her own words, reveals that she suffered no concrete injury in fact during the June 2002 or 2003 open enrollment periods. *See Black Faculty Ass'n of Mesa College v. San Diego Community College Dist.,* 664 F.2d 1153, 1155 (9th Cir.1981) (the plaintiff must "show a direct, individualized injury") (citation omitted); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Article III requires that "the plaintiff ... must allege a distinct and palpable injury to himself [or herself]").[11] As such, Plaintiff Gulck lacks standing and therefore has no viable claim as to MEA's dental and vision insurance plans for the relevant enrollment periods.[12]

### 2. ACTUAL DAMAGES

"The Supreme Court has held that even when no actual damages are suffered as a result of a violation of section 1983, a plaintiff still may be entitled to nominal damages." *Draper v. Coombs,* 792 F.2d 915, 921 (9th Cir.1986) (citing *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252(1978)). *See also Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("Our discussion of that issue [in *Piphus* ] makes clear that nominal damages ... are the appropriate means of 'vindicating' rights whose

10. Indeed, Plaintiffs concede that Plaintiff Gulck is "not filing a declaration stating that she would of have purchased dental and vision insurance in 2002 and 2001 if she had been permitted; she is unsure whether she would have." (Pls.' Opp'n to Defs.' Mot. for Summ. J. at 6.)

11. *See also City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675(1983) ("Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary

for the proper resolution of constitutional questions.") (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). *See Whitmore v. Arkansas,* 495 U.S. 149, 155–156, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (the injury in fact "must be concrete in both a qualitative and temporal sense").

12. At oral argument, Plaintiffs conceded that Plaintiff Gulck lacks standing in this case and that they are not pursuing nominal damages for Plaintiff Gulck or for vision care benefits.

deprivation has not caused actual, provable injury ....."). In *Piphus*, the Supreme Court held that "the denial of due process should be actionable for nominal damages without proof of actual injury." 435 U.S. at 266, 98 S.Ct. 1042. However, "it does not matter whether the underlying claim involves a deprivation of a procedural or substantive constitutionally-based right." *Draper*, 792 F.2d at 921. *See also Lancaster v. Rodriguez*, 701 F.2d 864, 866 (10th Cir.1983), *cert. denied*, 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983) (applying the *Piphus* rule in an Eighth Amendment context and expressly rejecting any procedural rights/substantive rights distinction as unhelpful and contrary to the underlying rationale); *Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985) (nominal damages for violation of "civil rights"); *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir.1984) (nominal damages for violation of Sixth Amendment rights); *Kincaid v. Rusk*, 670 F.2d 737, 746 (7th Cir.1982) (awarding nominal damages for violation of First Amendment rights where no actual damages shown); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980) (same); *Piphus*, 435 U.S. at 267 n. 24, 98 S.Ct. 1042 (listing lower federal courts that approved nominal damages under § 1983 where deprivations of constitutional rights were not shown to have caused actual injury).

■ Accordingly, in this § 1983 case alleging a First Amendment violation, Plaintiffs clearly are *not* required to demonstrate actual damages in order to proceed on their claim for nominal damages. *See Draper*, 792 F.2d at 921–22; *Kincaid*, 670 F.2d at 746; *Briscoe*, 619 F.2d at 402. Insofar as Defendants argue to the contrary, their arguments fail. In the Ninth Circuit, nominal damages must be awarded if a plaintiff proves a violation of his or her constitutional rights, irrespective of wheth-

er that violation caused any actual harm. *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir.2000) (quoting *George v. City of Long Beach*, 973 F.2d 706, 708 (9th Cir.1992)).

## C. FIRST AMENDMENT VIOLATION

Plaintiffs claim that by offering the optional insurance benefits exclusively to union members, Defendants coerced them to join MEA in violation of the First Amendment during the 2002 and 2003 open enrollment periods.

### 1. THE 2002 OPEN ENROLLMENT PERIOD

■ It is undisputed that during the June 2002 open enrollment period nonunion employees could not, under any circumstances, use their remaining Flex funds to enroll in the MEA sponsored dental insurance plan. At that time, nonunion employees could not even pay an agency fee that covered the collective bargaining costs of securing the dental plan in order to enroll in the dental insurance under the Plan. Plaintiffs contend that this constitutes unlawful coercion to join the union in violation of the First Amendment. The Court agrees.

Plaintiffs are exclusively represented for the purposes of collective bargaining by Defendant MEA. Nonunion employees, like Plaintiffs, cannot bargain directly with the City over the terms and conditions of their employment. Moreover, nonunion employees cannot bargain with their employer regarding the amount of Flex funds they receive annually or their eligibility to enroll in optional insurance plans under the Flexible Benefits Plan. Thus, Plaintiffs are bound to the collective bargaining agreement reached by the MEA and the City.

In 2002, the collective agreement effectively barred nonunion employees from using their Flex funds to enroll in the

members-only optional dental plan. Furthermore, the optional dental plan provided solely to union members was the only dental plan offered under the Flexible Benefits Plan. Thus, Plaintiffs would have had to join the union in order to use their Flex funds to enroll in the optional insurance plans. This constituted an objective coercion to join the union. *Cf. Nat'l Labor Relations Bd. v. Gaynor News Co.*, 197 F.2d 719, 722 (2nd Cir.1952) ("Discriminatory conduct, such as that practiced here [where only union members received retroactive wages and vacation benefits], is inherently conducive to increased union membership. In this respect, there can be little doubt that it 'encourages' union membership, by increasing the number of workers who would like to join and/or their quantum of desire.").

Defendants argue that the MEA bargained equally for members and nonmembers alike. Moreover, Defendants contend that the employer-provided benefit is only the lump sum amount of Flex funds every employee gets regardless of union membership. Because all employees receive the same allotment of Flex fund dollars each year, Defendants maintain that union and nonunion employees are treated equally and there is no coercion to join the union in violation of the First Amendment.

Defendants' argument is not well taken. The Court has already held that "[i]n this case, the employer-provided benefit is the lump sum allotment *and the use of pre-tax dollars for optional insurance plans ....*" (Order dated May 1, 2003 at 6.) Undoubtably, in 2002, Plaintiffs were in fact treated differently because they could not use their pre-tax dollars to enroll in the optional dental plan under any circumstances. Nonunion employees were simply barred from using their Flex funds to enroll in the optional dental plan. Furthermore, if Plaintiffs had left over Flex funds, those dollars would be distributed as ordinary taxable income. In which case, Plaintiffs would lose the pre-tax benefit of their unused Flex funds as well as the benefit of using those pre-tax dollars to enroll in a MEA sponsored dental insurance plan. Thus, in June 2002, Defendants put nonunion employees to an inescapable choice: either join the union or lose the benefit of using pre-tax dollars to enroll in MEA sponsored optional insurance plans. From a commonsense standpoint, this plainly constituted coercion to join the union.

Indeed, Defendants offer no legitimate reason for why they prevented nonunion employees from enrolling in the optional insurance plans during the June 2002 period. Moreover, Defendants do not even attempt to explain why (or under what pretense) they offered the optional insurance plans only to union members. While Defendants recognize Plaintiffs' claim that they were barred from enrolling in the dental plan in 2002, Defendants fail to address the claim head on. (*See* Def. MEA's Mot. for Summ. J. at 9–10.) Instead, Defendants argue that the June 2003 open enrollment is the only period which Plaintiffs have adequately alleged an injury and that no coercion existed because, by then, the Plan was amended to allow nonunion members the option of paying a voluntary agency fee in order to enroll in the optional insurance. (*Id.*) Defendants miss the mark. As this Court already found, Plaintiffs have standing to allege a First Amendment violation for the June 2002 enrollment period. As such, the Court finds that Defendants infringed Plaintiffs' First Amendment rights in June 2002 by providing the optional insurance plans to union members only. The Court therefore awards Plaintiffs Susan Brannian, David Cornacchia and Jennifer Shen nominal damages in the amount of one dollar each.

### 2. THE 2003 OPEN ENROLLMENT PERIOD

In October 2001, the MEA and the City revised the collective bargaining agreement to provide for agency shop elections for three of the four bargaining units. Any employee in a unit that voted in favor of an agency shop, had the choice of either joining the union or paying a fair share agency fee.[13] Of the three units, only the Technical unit (to which no Plaintiff belonged) voted for an agency shop. Moreover, all the bargaining units Plaintiffs in this case belong to specifically voted against an agency shop and the forced election between union membership or agency fee.

For the June 2003 open enrollment period, the MEA and the City amended the collective bargaining agreement to allow nonunion employees not part of the agency shop to enroll in the optional dental plans if they *voluntarily* paid the agency fee (or the conscientious objector fee) that agency shop employees were required to pay. Accordingly, in June 2003, only union members, agency shop employees (who either joined the union or paid the agency fee), and voluntary agency fee payers could use their pre-tax Flex funds to enroll in the optional insurance plans.

■ While seemingly benign on its face, the Court finds that this voluntary agency fee option, as implemented, was impermissibly coercive in violation of the First Amendment. Clearly, in June 2003, Plaintiffs were induced to pay an agency fee when their respective bargaining units had expressly voted against an agency shop

and the forced election between union membership and an agency fee. The fact that Defendants conditioned enrollment in the dental plan on voluntarily paying the agency fee does not change the coercive nature of this program. More importantly, as Defendants themselves submit, the agency fee covered all charges the union incurred for representational, collective bargaining, and contract enforcement activities in general, not just the costs involved in negotiating, securing and administering the optional insurance plans that Plaintiffs wanted to enroll in. Thus, the voluntary agency fee was overbroad and coerced Plaintiffs into subsidizing the union's costs for more than the benefit they sought to derive (i.e. enrolling in the MEA sponsored dental plan). *See Foster v. Mahdesian,* 268 F.3d 689, 691–92 (9th Cir. 2001) (fair share agency fees "are designed to compensate the unions for the *benefits that the plaintiffs receive* from collective bargaining") (citing *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)) (emphasis added); *Abood,* 431 U.S. at 219, 97 S.Ct. 1782 (noting that "Congress determined that [an agency fee] would promote peaceful labor relations to permit a union and an employer to conclude an agreement requiring employees *who obtain the benefit of union representation* to share its cost") (emphasis added); *Chicago Teachers Union, Local No. 1, AFT. AFL–CIO v. Hudson,* 475 U.S. 292, 307, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (agency fees cannot include expediters for purposes that do not benefit the nonunion members).

Defendants were already required to provide all employees—regardless of union

13. In lieu of the agency fee, a nonunion member could choose to pay a conscientious objector fee. However, only a nonunion employee who was a member of a bona fide religion, body, or sect that has historically held consci-entious objections to joining or financially supporting public employee organizations would qualify as a "conscientious objector" under the agreement.

membership or agency fee payer status-with health insurance, life insurance and the same lump sum allotment of pre-tax Flex funds. Becoming a voluntary agency fee payer then, in order to enroll in the dental plan, would effectively force Plaintiffs to subsidize the costs of union activities that he or she would have otherwise received for free. This amounts to more that coercing union membership; it constitutes coercion to subsidize the union itself.

Simply put, in June 2003, nonunion employees who just wanted to enroll in the dental plan, had to pay an overbroad agency fee that encompassed more than the cost of providing the optional insurance plans and, in any case, included costs for union activities the nonunion member already received free of charge. It would be a different situation altogether if Defendants demonstrated that the voluntary agency fee was merely the pro rata cost of negotiating, securing and administering the optional insurance plans. *See Hudson,* 475 U.S. at 306–07, 106 S.Ct. 1066 (an agency fee may include "the expenditures for collective bargaining and contract administration that had been provided for the benefit of nonmembers as well as members"). Accordingly, the Court finds that Defendants coerced Plaintiffs in violation of the First Amendment during the June 2003 open enrollment period. The Court awards Plaintiffs Susan Brannian, David Cornacchia and Jennifer Shen each nominal damages in the amount of one dollar.

**D.** *ATTORNEY'S FEES*

In a § 1983 action, the district court, in its discretion, may award the prevailing party a reasonable attorney's fee as part of its costs. 42 U.S.C. § 1988. "Therefore, in order to qualify for attor-

ney's fees under § 1988, a plaintiff must be a 'prevailing party.'" *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). A plaintiff who wins nominal damages in a § 1983 action is a prevailing party under § 1988 and therefore may be eligible for attorney's fees. *See id.* at 112, 113 S.Ct. 566; *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). "However, in some circumstances such a 'prevailing party' should still not receive an award of attorney's fees." *Buckhannon,* 532 U.S. at 603 n. 6, 121 S.Ct. 1835 (citing *Farrar,* 506 U.S. at 115–116, 113 S.Ct. 566). Thus, Plaintiffs here may or may not be entitled to attorneys fees even though they are considered the prevailing party. Such a decision is within the discretion of the Court and is better adjudicated on a separate motion for attorney's fees.

**IV.** *CONCLUSION AND ORDER*

The parties' cross motions for summary judgment are **GRANTED** in part and **DENIED** in part. As the Court previously held, Plaintiffs' claims for declaratory and injunctive relief are moot and their summary judgment motion is therefore **DENIED** as to those claims. Plaintiff Gulck lacks standing to seek nominal damages and her claims are therefore **DISMISSED** without prejudice. The remaining Plaintiffs, Susan Brannian, David Cornacchia and Jennifer Shen, are each entitled to **two dollars** in nominal damages for the Defendants' First Amendment violations during the June 2002 and 2003 open enrollment periods. Plaintiffs may be, but are not necessarily, eligible for attorney's fees in light of the nominal damages awards.

The Clerk shall enter judgment for Plaintiffs Brannian, Cornacchia and Shen

and against the Defendants in the amount of two dollars each. Judgment shall be entered dismissing Gulck's claims. This shall constitute a final judgment. Any motion for attorney's fees shall be filed in accordance with Rule 54(d) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**